JOHN DEMENT, CHARLES DEMENT, AMOS C. STEDMAN, LUCINA STEDMAN, OLOF JOHNSON, NILS HADEAN, alias NELSON ADEAN, and THE BISHOP HILL COLONY, Appellants, *v.* JAMES F. BONHAM, Appellee.

APPEAL FROM PEORIA.

Where a vendor of land grants an extension of time for payment to the vendee, and a third party afterwards represents to the vendor that the vendee does not intend to take the land; and himself accepts a conveyance of it, paying an additional price of one hundred dollars, and the original vendee in apt time tenders the balance due under his contract, a court will decree a conveyance to the first purchaser. A second purchaser, under such circumstances, is a fraudulent one.

BONHAM, the complainant, filed his bill against the defendants in the Henry Circuit Court, stating that on and before the 11th November, 1851, the Dements and Stedman were partners at Dixon, Lee county, Illinois, in the purchase and sale of real estate; that on that day they owned the south-west fractional quarter, and the south half of the north-west fractional quarter of section 19, in township 14 north, 4 east, in Henry county. That on the same day he purchased of John Dement, one of said firm, the land before described, by contract in writing, as follows:

" Articles of Agreement, Made this eleventh day of November, in the year of our Lord one thousand eight hundred and

fifty-one, between John Dement, of Lee county, Illinois, of the first part, and James F. Bonham, of Henry county, Illinois, of the second part, witnesseth, that if the said party of the second part shall first make the payment and perform the covenants herein-after mentioned on his part to be made and performed, the said party of the first part hereby covenants and agrees to convey and assure to the party of the second part, in fee simple, clear of all incumbrances whatever, by good and sufficient warrantee deed, subject to any valid pre-emption right, the following lot, piece or parcel of ground, viz.: the south-west fractional quarter, and the south half of the north-west fractional quarter of section nineteen, in township fourteen north, range four east, containing one hundred and fifty-three acres and fifty-eight hundredths, be the same more or less. And the said party of the second part hereby covenants and agrees to pay the said party of the first part, without further delay than is herein specified, as the time of payment is hereby mutually agreed to form an essential part of this contract, the sum of two hundred and twenty-five dollars, in manner following: twenty-five dollars cash in hand paid, and the remaining two hundred dollars payable on or before the sixteenth day of October next, in the promissory note of said Bonham given this day, and to pay all taxes, assessments or impositions that may be legally levied or imposed on said lot; and in case of failure of the said party of the second part to make either of the payments, or perform any of the covenants on his part, the party of the first part shall have the right to declare this contract forfeited and determined, and to re-enter and take possession of said premises, and to have and retain all payments that shall have been made upon said contract.

"It is mutually agreed that all the covenants and agreements herein contained shall extend to and be obligatory upon the heirs, executors, administrators and assigns of the respective parties.

' "In witness whereof, the parties to these presents have hereunto set their hands and seals the day and year first above written."

That Bonham lived sixty-five miles from Dixon, and it was inconvenient for him to pay the $200 on the precise day it was due; he therefore employed Amos Hartley and George Firkins to represent the same to Dement, and to try and get an extension for a few days. That they went to Dement and Stedman and got them to agree that they would extend the payment for a few days, and that Dement and Stedman told them to tell Bonham that he need not be uneasy, that they would not take the advantage of any one. Whereupon he delayed to make the payment for five days after it was due. That there was a certain company, under the name of the "Swedish Colony of Bishop Hill," doing business through trustees, who were, on

the 21st October, 1852, Olof Johnson and John Olson. That Nils Hadean was their agent to buy lands. That they sent him to represent to Dements and Stedman that Bonham had abandoned the intention of fulfilling his contract, and that if they would convey to the said trustees it would be all right so far as Bonham was concerned.

That Hadean went to Stedman and Dements, and made said representations falsely and fraudulently, and thereby induced Stedman, who held the legal title, to convey the land to said Johnson and Olson, trustees as aforesaid.

That he, complainant, sent Simeon Collison to Dement and Stedman with the money, on the 21st October, 1852, to pay the sum due on his contract; that he (Collison) tendered the money, and demanded a deed, which was refused, the land having a few hours previous been conveyed to the said trustees.

Always, since then, complainant has been ready and willing to pay.

On the 30th October, 1852, complainant again applied for a conveyance of the land, which was refused; but Dements and Stedman gave him a written certificate, as follows:

" We certify that Nelson Adean, agent of Oloff Johnson & Co., came to us soon after a certain contract was run out that we gave to James F. Bonham, for a certain piece of land in Henry county, Illinois, and represented that said Bonham did not intend to fulfil said contract, and that if would let them, the said Johnson & Co., have a deed of said land, it would be all right; and supposing it to be so, we deeded the land to them, October 11, 1852—some five days after Mr. Bonham's contract expired. The same day after the deed was executed, Mr. Bonham sent money to fulfill said contract.

"*Dixon, October* 30, 1852. DEMENTS & STEDMAN."

That the " Bishop Hill Colony " has since been incorporated, and the title to the land thus acquired has vested in said corporation. Said corporation had notice of matters before stated. That said corporation, and all others claiming under Stedman and Dements, hold as trustees of complainant, and subject to his rights. Complainant has often applied to Johnson and Olson, Dements and Stedman, etc., for conveyance, which they have refused to make.

Prayer for conveyance, etc. Answer under oath waived.

The defendants in their several answers admit the making of the original contract with Bonham; that Dements and Stedman were partners in buying and selling land as charged; that the land in controversy was purchased in the name of Stedman, and that he conveyed the same to Johnson and Olson, as trustees, on the 21st October, 1852; that the purchase was made

Dement et al. *v.* Bonham.

through their agent, Hadean, and that he had notice of the prior contract with Bonham.

They deny that Dements or Stedman agreed, verbally or otherwise, to extend the contract; that Hadean made any false or fraudulent representations to them to induce them to convey to Johnson and Olson, and all the other material matters charged in the bill—insisting that Bonham's contract was forfeited, and that they purchased in good faith, paying a consideration of three hundred dollars; and denying all fraud, combination, etc.

Complainant filed a replication.

The cause was tried on bill, answer, exhibits and proof, and the Circuit Court decreed : That complainant pay into court for the use of Johnson and Olson, trustees, $294.20, being principal and interest due on the contract with Dements and Stedman. That Johnson and Olson be deemed as trustees holding the legal title for complainant. That Olson and Johnson convey to complainant the land in controversy. That the contract between Dement and complainant be specifically performed, and that Johnson and Olson pay the costs.

The errors assigned are, the rendering the decree in favor of complainant, and against defendants below; and not dismissing the complainant's bill.

N. H. PURPLE, for Appellants.

MANNING & MERRIMAN, for Appellee.

CATON, C. J. A day or two before the final payment on the land in question was due, the purchaser, by his agent, called on the seller, and asked for an extension for a few days. The seller did not make a positive agreement to extend the time, but told the purchaser that he never took advantage in such cases, and said that a few days would make no difference. Five days after the money was due, another party appeared, and told the seller that the first purchaser did not intend to take the land, offered one hundred dollars more for it, which was accepted, and a conveyance made. The same day the first purchaser appeared, and offered to make his last payment and take a deed, but was told it was too late.

If here was no legal and binding agreement to postpone the payment, for a breach of which an action at law could have been maintained, there was such assurances as were binding upon the vendor's conscience, and such as are sufficient in a court of equity to excuse the purchaser from a strict and punctual performance. The vendor's assurances occasioned the delay, and he ought not in good faith to be allowed to take advantage of it. As to the

second purchaser, his rights are not entitled to a moment's consideration, but his conduct deserves the severest reprehension. He acquired them by means of a falsehood. He falsely assured the vendor that the first purchaser did not wish to complete his purchase, for the mere purpose of getting the land himself. He was not only a purchaser with actual notice, but his hands are stained with actual fraud.

The decree is affirmed.                           *Decree affirmed.*