ANNIE L. KELLY

*v.*

GEORGE W. KENDALL, Sr., *et al.*

*Filed at Ottawa November 13, 1886.*

1. SPECIFIC PERFORMANCE—*contract obtained by fraud.* A court of equity will not specifically enforce a contract for the sale of land, which has been procured to be made through the practice of deception and making of false representations.

2. STATUTE OF FRAUDS—*by whom it may be availed of.* A verbal contract for the sale of land is equally as obligatory on the parties as a written one, when they make no objection to it themselves that it is not in writing. Third persons can not object for them that they are not bound by a verbal contract.

3. SAME—*written contract operating as a repudiation of a prior verbal agreement—fraudulent representations.* A written contract for the sale of land will not operate as a repudiation of a prior verbal one, when there is no such intention, as, where the written contract is induced by false representation that a prior purchaser under the verbal contract would not take the land.

APPEAL from the Circuit Court of Lake county; the Hon. CLARK W. UPTON, Judge, presiding.

Mr. CHARLES WHITNEY, and Mr. ALFRED MOORE, for the appellant:

As to what constitutes fraud, and what must be shown in order to avoid a contract for fraud, see *Kohl* v. *Lindley*, 39 Ill. 195; *Mitchell* v. *Deeds*, 49 id. 416; *Walker* v. *Carrington*, 74 id. 446; *Hirden* v. *People*, 9 Bradw. 42.

Lehman's contract, if he had any, was void under the Statute of Frauds, and can not be made the ground of defence any more than of an action. *Wheeler* v. *Frankenthal*, 78 Ill. 124.

Messrs. KNICKERBOCKER & HOLDOM, for the appellees:

A court of equity will not decree a specific performance of a contract obtained through fraud or misrepresentation. Fry on Specific Per. secs. 233, (note,) 241, 242, 425, 432; *Tamm* v. *Lavalle*, 92 Ill. 263; *Race* v. *Merton*, 86 id. 94; *Gosse* v. *Jones*, 73 id. 508; *Casey* v. *Hall*, 81 id. 160; *Taylor* v. *Merrill*, 55 id. 52; *McCabe* v. *Crosin*, 69 id. 501.

Unless the contract has been entered into with perfect fairness, and without misrepresentation, misapprehension or oppression, and it will not be unjust or inequitable to enforce it, specific performance will not be decreed. *Race* v. *Merton*, 86 Ill. 95; *Fish* v. *Leser*, 69 id. 394.

A specific performance will not be decreed unless the agreement has been entered into with perfect fairness, and without misapprehension, misrepresentation or oppression. *Frisbie* v. *Ballance*, 4 Scam. 299; *Longwood* v. *Barnerderton*, 3 Atk. 133; *Underwood* v. *Hitchcock*, 2 Ves. 279; *Seymour* v. *Delancey*, 3 Cow. 505.

A contract procured by false representations, equity will not specifically enforce. *Kelley* v. *Sheldon*, 8 Wis. 108; *Miner*

v. *Medbury,* 6 id. 295; *Smith* v. *Mariner,* 5 id. 551; *Reed* v. *Jones,* 8 id. 392; *Wells* v. *Millett,* 23 id. 64; *McClelland* v. *Scott,* 24 id. 81.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill for the specific performance of a contract for the sale and conveyance of land described in the bill. The bill and supplemental bill set forth, that on September 7, 1883, George W. Kendall, Sr., and Julia Kendall, his wife, executed to the complainant a contract, in writing, for the sale and conveyance of the premises to her for $3500, and the assumption of a mortgage of $1000,—the $3500 to be paid, $125 down, the balance in time payments; that on September 11, 1883, George W. Kendall, Sr., and Julia Kendall, conveyed the same premises to George W. Kendall, Jr., and Herman P. Kendall, they having notice of the contract, and that the latter, on September 13, 1883, conveyed the premises to E. J. Lehman, he having like notice of the contract; that the complainant had performed and tendered performance of the contract on her part. The circuit court, upon hearing, dismissed the bill, and complainant has appealed.

The complainant made the contract through her husband, R. H. Kelly, as her agent, and Lehman made his purchase through his agent, one Emmett.

There is conflict in the testimony, but the evidence establishes, satisfactorily to us, the following facts: That George W. Kendall, Jr., and Herman P. Kendall, the sons of George W. Kendall, Sr., were in the occupation of the land, living upon it, having previously purchased the same from their father, and being entitled to a deed thereof from him; that about the first of September, 1883, Emmett applied to George W. Kendall, Jr., and Herman P. Kendall, to purchase the land; the latter stated their price, $3500, and the assumption of the $1000 mortgage, and gave to Emmett an option to

take the land, or not, within ten days; that on the succeeding day, R. H. Kelly called upon the Kendall sons to buy the land; they informed him of the price, of the option which had been given to Emmett, and Kelly said that if Emmett did not take the land, he would, and would come out at the end of the ten days, but requested to be notified in case Emmett did take the land, so as to save him the trouble of coming out to the place from Chicago. The second day after this, Emmett came to see the Kendalls again, and said he would take the place. The Kendalls then requested Emmett, who was going to Chicago the next day, to notify Kelly that the place was sold, which notice was given. Afterwards, Kelly came again to see the Kendalls, and represented to them that Emmett had "backed out," and was not going to take the place,—that he had got no word from Emmett,— and, as Kelly says, they suggested to him to go and see their father, who was then residing in Waukegan, and take the place if he wanted it. Kelly did so, and obtained from the father, George W. Kendall, Sr., and his wife, this contract of September 7, 1883. A day or two after this, they found out that Emmett had bought the place of their sons, and that Emmett had so informed Kelly, and they refused to carry out the contract, and on September 11, 1883, they made a deed of the premises to the sons, and the latter, on September 13, 1883, conveyed the land to Lehman, in accordance with the contract with Emmett,—Lehman paying $3500, and assuming the payment of the $1000 mortgage. He immediately went into the possession of the premises, and has occupied them ever since.

These facts go to show that the contract in question was procured to be made through the practice of deception, and the making of false representations that Emmett would not take the land, and that the latter had not informed Kelly that he would take it. Had it not been for this, and had the Kendalls known that Emmett would take the property, and

that he had so notified Kelly, it is entirely apparent, from the evidence, that the contract of September 7, 1883, would not have been entered into. A contract obtained under such circumstances is not a fair and honest one, and there is no equity to have it enforced. In Fry on Specific Performance, sec. 241, the author says : It is enough, generally speaking, to induce the court to refuse performance, that there are any circumstances about the making of the contract which render it not fair and honest to call for its execution. And see *Dement* v. *Bonham,* 26 Ill. 158, *Mitchell* v. *King,* 77 id. 466, and *Tamm* v. *Lavalle,* 92 id. 263. As said in the last case : "To entitle a party to relief, he must come into court with clean hands, and a cause that appeals to equity for relief."

It is said that the promise from the Kendalls to Emmett, if any such promise was made, was a mere verbal promise to convey lands, and void under the Statute of Frauds ; that George W. Kendall, Sr., by the act of executing the written contract to the complainant, repudiated the prior verbal contract with Emmett. A verbal contract respecting land may be equally obligatory upon the parties to it as a written contract, where they make no objection themselves that it is not in writing. It is not for a third person to object for them that they are not bound by a verbal contract. The written contract would be no repudiation of the prior verbal one where there was no such intention, and the written contract was induced by false representations that Emmett would not take the land under the verbal contract.

The decree will be affirmed.

*Decree affirmed.*