## WALTER H. WILSON

*v.*

## HENRY B. MASON *et al.*

*Filed at Ottawa October 11, 1895.*

1. BROKERS—*when real estate broker may claim his commissions.* A real estate broker is entitled to his commissions when he has furnished a purchaser with whom the principal enters into a valid contract, even though executory in form, either upon the terms previously proposed or upon modified terms then agreed upon, and even if the sale is never actually completed by reason of the default of one of the parties to the contract without fault of the broker.

2. SAME—*contract within Statute of Frauds not a basis for commissions.* A contract to sell land against which the vendee can successfully plead the Statute of Frauds is not a valid contract, for procuring which a broker employed to sell the land may claim commissions.

3. CONTRACTS—*to purchase land by executors—one signing for all.* A contract to purchase land by two executors, signed in the names of both of them by one only, without any written authority from his co-executor, is not a valid contract which will entitle a broker to commissions for procuring the sale of the property,—at least when there is no proof made of testamentary power to purchase.

4. EXECUTORS AND ADMINISTRATORS—*all must join in power of purchase or sale.* All the executors who have qualified must join in executing a testamentary power of sale or purchase.

*Wilson* v. *Mason,* 57 Ill. App. 325, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. GEORGE F. BLANKE, Judge, presiding.

This is an action of assumpsit, brought by appellant, a real estate broker, against appellees to recover commissions, claimed to have been earned by appellant, as broker, for the sale of a building, and the ground on which the same stands, known as the "Real Estate Board Building," situated at the corner of Dearborn and Randolph streets in the city of Chicago, and the equity of redemption in which was owned by appellees. The amount claimed is $9375.00, being two and a half per

cent on $375,000.00, the price at which appellees were willing to sell the property.

The declaration contains, besides the common counts, six special counts. The first count alleges, that defendants requested plaintiff to procure for them a purchaser for said building at $375,000.00, and promised to pay plaintiff a commission of 2½ per cent upon said sum, if he should so procure a purchaser; that plaintiff procured a purchaser, ready, willing and able to buy said premises at said price; and that defendants entered into a contract with the purchaser, whereby they agreed to sell and he agreed to buy said premises for said sum. The second count is the same as the first, except that the promise is alleged to have been a promise to pay the customary rate for such services in Chicago, and the customary rate is alleged to have been, and to have been known to defendants to have been, 2½ per cent on the contract price. The third count is the *quantum meruit* count for procuring such a purchaser as is described in the first and second counts. The fourth count avers, that defendants requested plaintiff to sell said premises at $375,000.00, and promised to pay him a commission of 2½ per cent' upon said sum in case of sale by him; and that thereafter plaintiff sold said premises at the price fixed. The fifth count is the same as the fourth with the exception that defendants are alleged to have promised to pay the customary rate in Chicago for services in making such sales, which rate is averred to have been 2½ per cent upon the price for which the property was sold. The sixth count is the *quantum meruit* count for services in making said sale at said price, fixing the amount "deserved" at $9375.00.

The plea was the general issue. A jury was waived by agreement, and the cause was submitted to the court for trial. The finding and judgment of the trial court were for the defendants, and the Appellate Court has affirmed the judgment of the trial court.

The parties, whom the appellant claimed to have procured as purchasers of the property, were "the executors under the will of Alfred Cowles." On October 25, 1890, a written contract was made, signed: "James L. Houghteling, Henry B. Mason by James L. Houghteling;" and also signed: "Lewis L. Coburn, Alfred Cowles, executors under the will of Alfred Cowles, by Lewis L. Coburn." By the terms of this contract it is recited, that Mason and Houghteling sell, and Coburn and Cowles, "executors under the will of Alfred ‚Cowles, deceased," buy said premises for $375,000.00, the buyers assuming two mortgages, one for $175,000.00 and one for $75,000.00, maturing November 1, 1893, and drawing six per cent interest, the balance of the purchase money to be paid as follows: $75,000.00 in cash and $50,000.00 in the form of a mortgage note of $50,000.00 made by the trustees of the Newberry estate in favor of Alfred Cowles, maturing in June, 1891, and secured on property in Chicago; the sellers to furnish complete merchantable abstract at once and the buyers to have it examined without delay, it being the intention to close up the transfer on November 1, 1890.

A few days after the contract of October 25, 1890, was made, Coburn objected to the title upon the ground that, in a certain foreclosure proceeding shown by the abstract of title, a child, born after the foreclosure bill was filed, was not made a party to the proceeding, and that, therefore, the interest of said child was still outstanding. Because of this objection the purchasers declined to take the property. After the failure of all efforts to induce them to close up the purchase and accept the title as it was, one of the sellers suggested, that the contract as signed should be canceled, because, if it should be recorded, it would appear to be a cloud upon the title and prevent a future sale, and, this suggestion being acceded to by the proposed purchasers, he wrote the word, "canceled," across the face of the contract; and the sale

therein mentioned was never consummated, but was abandoned.

It was subsequently held by this court in *McCampbell* v. *Mason*, 151 Ill. 500, that the decree in said foreclosure proceeding was valid, notwithstanding the failure to make the child born after filing the bill a party thereto.

HAMLINE, SCOTT & LORD, for appellant:

If Wilson procured a purchaser ready, able and willing to pay the price required by the owner, and the parties entered into a binding contract, then Wilson *eo instanti* earned his commissions, regardless of whether the vendee refused to take a deed and pay for the property, either with or without right. *Pratt* v. *Hotchkiss*, 10 Ill. App. 603; *Goodridge* v. *Holiday*, 18 id. 365; *McConaughy* v. *Mahannah*, 28 id. 169; *Green* v. *Hollingshead*, 40 id. 197; *Short* v. *Millard*, 68 Ill. 292; *Kerfoot* v. *Steele*, 113 id. 615; *Lawrence* v. *Atwood*, 1 Ill. App. 217.

We think that in view of these authorities there can be no question as to the law in Illinois. The law outside of Illinois is practically all one way. *Heinrich* v. *Korn*, 4 Daly, 74; *Glenworth* v. *Luther*, 21 Barb. 145; *Brown* v. *Helmuth*, 2 Delahanty, 566; *Mooney* v. *Elder*, 56 N. Y. 236; *Rice* v. *Mayo*, 107 Mass. 550; *Chopin* v. *Bridges*, 116 Mass. 105; *Coleman's Exrs.* v. *Meade*, 13 Ky. 358; *Keys* v. *Johnson*, 68 Pa. St. 42; *Love* v. *Miller*, 53 Ind. 294; *Potvin* v. *Curran*, 13 Neb. 303; *Leckie* v. *Norton*, 43 Conn. 219; *Veazie* v. *Parker*, 72 Me. 444; *Goss* v. *Stevens*, 32 Minn. 474; *Love* v. *Owens*, 31 Mo. App. 501; *Christenson* v. *Wooley*, 41 Mo. App. 53; *Middleton* v. *Findlah*, 25 Cal. 76; *Koch* v. *Emmerling*, 22 How. 69; Wharton on Law Agency, sec. 328.

Even as between parties, a verbal contract for the sale of lands is equally as obligatory upon the parties as a written one, when they make no objection themselves that it is not in writing; and third persons cannot object for them that they are not bound by the contract. *Kelly* v. *Kendall*, 118 Ill. 650; *King* v. *Bushnell*, 121 id. 659.

Unless the defense of the Statute of Frauds is inter-posed by a plea to bill for specific performance by the party bound thereby, a parol contract is valid, and will be enforced. *Insurance Co.* v. *Gordon,* 20 Ill. App. 566; *Dock Co.* v. *Kinzie,* 49 Ill. 289.

EDWIN BURRITT SMITH, and JAMES C. HUTCHINS, for appellees:

The right of a broker to commissions, in the absence of fault by the principal, depends on whether he has done all that he agreed to do. *Middleton* v. *Findlah,* 25 Cal. 76; *Kerfoot* v. *Steele,* 113 Ill. 615; *Pearson* v. *Mason,* 120 Mass. 53; *Walker* v. *Terrell,* 101 id. 257; *Hymans* v. *Miller,* 71 Ga. 608.

A broker is not entitled to compensation if he fails to perform the whole service for which he was employed. *Sibbald* v. *Iron Co.* 83 N. Y. 378.

Where the agreement is that the broker's commission depends upon the consummation of the sale, he can not recover unless the sale goes through. *Parmly* v. *Head,* 33 Ill. App. 134; *Kimberly* v. *Henderson,* 29 Md. 512; *Blankenship* v. *Ryerson,* 50 Ala. 426.

A verbal contract within the Statute of Frauds can not be made either the ground of a demand or the ground of a defense. *McGinnis* v. *Fernandes,* 126 Ill. 228.

The rule is, where it appears upon the face of the bill that the agreement to convey is oral, it may be taken advantage of by demurrer to the bill. *Cloud* v. *Greasley,* 125 Ill. 313.

In this State executors have no power in respect to real estate, other than to sell to pay debts, unless it be granted by will. *Sebastian* v. *Johnson,* 72 Ill. 283; *Ryan* v. *Duncan,* 88 id. 144; Horner's Probate Law of Illinois, sec. 84, and authorities cited; *Walker* v. *Diehl,* 79 Ill. 473.

The presumption is that an executor has no power to bind the estate. Woerner on Am. Law of Administration, secs. 356, 381, and authorities cited.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

There appears to have been some conflict in the testimony as to what the agreement was between appellant and appellees about the payment of commissions. The agreement was oral, and the parties differ as to its terms. Appellant swears, that he was to be paid two and a half per cent upon the contract price for procuring a purchaser, or making a sale of the property. The testimony of appellees is to the effect, that the commission was only to be paid in case the purchaser took and paid for the property. We cannot enter into a discussion of the facts upon this subject. The judgment of the Appellate Court affirming the judgment of the trial court is conclusive here, so far as the facts put in issue by the pleadings are concerned. The question, however, as to whether the appellant procured a purchaser of the property, or made a sale thereof, is to some extent a question of law, and has been raised by the propositions submitted to the trial court. No proposition was submitted by appellees, the defendants below, to be held as law by the trial court in the decision of the case. Seven propositions were submitted by the plaintiff below, the appellant here. Of these the trial court modified the first and sixth, and marked them "held" as so modified. The second, third, fourth and fifth were marked as "held," but the court refused to mark the seventh as "held," and marked the same "refused." The only assignments of error made by the appellant, which we can consider, relate to the modification of the first and sixth propositions and the refusal of the seventh.

The duty of a broker, who is employed to sell real estate, is to find and produce to the vendor a purchaser, who is ready, willing and able to complete the purchase as proposed. This he must do before he is entitled to any commissions. If the vendor rejects the purchaser so produced, the broker is bound to show that such pur-

chaser was willing, ready and able to perform the contract according to the proposed terms. If the principal accepts the purchaser thus presented, either upon the terms previously proposed or upon modified terms then agreed upon, and a valid contract is entered into between them, the commission is earned. In such case, the broker has earned his commission although the sale is never actually completed, if the failure of the purchaser to complete the sale results from the inability of the vendor to make a good title, and without fault on the part of the broker. (*Coleman's Exrs.* v. *Meade*, 13 Bush, 358; *Glentworth* v. *Luther*, 21 Barb. 145; *Pratt* v. *Hotchkiss*, 10 Bradw. 603; *Goodridge* v. *Holladay*, 18 id. 363; 2 Am. & Eng. Ency. of Law, pp. 578, 531). The propositions as modified by the trial court conform substantially to these views, and, as they are sustained by the authorities, we see no error in the modifications made.

By the seventh proposition the trial court was asked to hold as a proposition of law, that, under the evidence in the case, defendants could not defeat plaintiff's claim on the ground that, under the Statute of Frauds, the contract entered into between them and the proposed purchasers was not enforceable. The proposed purchasers were the two executors of an estate; one of the executors signed the names of both of them to the contract; the evidence failed to show, that the executor so signing had any written authority from his co-executor to sign the latter's name to the contract; and it also failed to show, that the executors had any power under the will to purchase land for the estate. The proof tends to establish affirmatively, that whatever authority the executor, who signed the contract, had to execute it for his co-executor was merely oral.

Some of the cases go so far as to hold, that the broker is not entitled to his commissions unless the sale is actually accomplished by the delivery of the deed of the land from the vendor to the vendee and the payment of the

purchase money by the latter, or unless it is proven that the sale is prevented by the fault of the vendor. Other cases seem to hold, that the broker is entitled to his commissions when the minds of the vendor and purchaser meet in a verbal agreement for the sale by the one and the purchase by the other of the land. We are not inclined to follow either of these classes of cases, regarding them as extreme and exceptional. The true rule is, that the broker is entitled to his commissions, if the purchaser presented by him and the vendor, his employer, enter into a valid, binding and enforceable contract. If, after the making of such a contract, even though executory in form, the purchaser declines to complete the sale and the seller refuses to compel performance, the broker ought not to be deprived of his commissions. He has done all that he can do when he produces a party who is able, and, in binding form, offers to purchase upon the proposed terms. An agreement by a real estate broker to procure a purchaser not only implies that the purchaser shall be one able to comply, but that the seller and the purchaser must be bound to each other in a valid contract. So, where the agreement of the real estate broker is to make a sale, his commission is earned when a contract is entered into which is mutually obligatory upon the vendor and vendee, even though the vendee afterwards refuses to execute his part of the contract of sale or purchase. (*Parker* v. *Walker*, 86 Tenn. 566; *Coleman's Exrs.* v. *Mead, supra; Francis* v. *Baker*, 45 Minn. 83; *Love* v. *Miller*, 53 Ind. 294; *Veazie* v. *Parker*, 72 Me. 443; *Willes* v. *Smith*, 77 Wis. 81; *Rice* v. *Mayo*, 107 Mass. 550; *Christensen* v. *Wooley*, 41 Mo. App. 53; *Love* v. *Owens*, 31 id. 501; *Greene* v. *Hollingshead*, 40 Ill. App. 195; *Short* v. *Millard*, 68 Ill. 292; *Kerfoot* v. *Steele*, 113 id. 610; *Ward* v. *Cobb*, 148 Mass. 518).

An oral agreement upon the part of the purchaser of land would not be a valid agreement; and if he refused to complete the sale of the land after such oral agree-

ment, without fault upon the part of the seller, the obligation of the broker would not be fulfilled, and he could not recover his commissions. (*Parker* v. *Walker*, *supra;* *Middleton* v. *Findla*, 25 Cal. 76; *Whitney* v. *Cochran*, 1 Scam. 209; *Christensen* v. *Wooley*, *supra*). Nor would a written agreement be binding upon the purchaser of land, under the Statute of Frauds, if such agreement were signed for him by some other person not lawfully authorized in writing to do so. (Ill. Rev. Stat. chap. 59, sec. 2; *Cloud* v. *Greasley*, 125 Ill. 313; *McGinnis* v. *Fernandes*, 126 id. 228).

Executors have no power to purchase real estate unless such power is granted by will. Power to purchase is an incident of the power to invest, but the will must be produced to show that the power to invest exists. An executor has power to complete a contract made by his decedent, but he cannot by virtue of the general powers of his office make any contract which will bind the estate. Executors, whether acting separately or jointly, have no authority to create an original liability on the part of the estate, or enter into an executory contract binding upon or enforceable against it. (*Barry* v. *Lambert*, 98 N.Y. 301; *Austin* v. *Munro*, 47 id. 366; 7 Am. & Eng. Ency. of Law, pp. 299, 300; *Trull* v. *Trull*, 13 Allen, 407; 2 Woerner's Am. Law of Administration, secs. 328, 381; *Walker* v. *Diehl*, 79 Ill. 473; *Ryan, Admr.* v. *Duncan*, 88 id. 144). As a general rule, the power to sell land does not exist in the executor, unless he is directed to sell by the will either expressly or by implication. (2 Woerner's Am. Law of Administration, sec. 339). And we see no reason why the same is not true as to the power to purchase, which may be involved in a power to invest. All the executors who qualify must join in executing a testamentary power of sale or purchase. (2 Williams on Executors, Randolph & Talcott's notes, top p. 154, marg. p. 828; 2 Woerner's Am. Law of Administration, sec. 346; *Williams* v. *Mattocks*, 3 Vt. 189; *Floyd's Heirs* v. *Johnson*, 2 Litt. (Ky.) 109). It follows, that the actual title of an executor must be estab-

lished, and that the presumption of regularity accorded to official acts does not aid his proceedings. (Abbott's Trial Evidence, p. 55; *Bank of Troy* v. *Topping*, 13 Wend. 557; *Hathaway* v. *Clark*, 5 Pick. 490). In the case at bar, the will of Albert Cowles was not produced, nor were the powers of the executors, either joint or several, shown.

An executor cannot delegate to another the execution of a power of sale committed to him by the will in trust and confidence. (2 Williams on Executors—Am. notes by R. & T.—top p. 133, marg. p. 815; 7 Am. & Eng. Ency. of Law, pp. 300, 301). A power of sale given by will to two executors, both of whom qualify and take upon themselves the burden of the execution of the will, cannot be delegated by one to the other; and an agreement for a sale entered into by one co-executor for himself and the other is not valid, and cannot be specifically enforced. (*Berger* v. *Duff*, 4 Johns. Ch. 368; *Sebastian* v. *Johnson*, 72 Ill. 282; 7 Am. & Eng. Ency. of Law, p. 301).

Hence, we are inclined to think that, under the proofs as made in this case, the contract was not valid and enforceable against the proposed purchasers, executors of the estate of Alfred Cowles, deceased; and that there was no error in refusing the seventh proposition. It is true, as is claimed by counsel for appellant, that a verbal contract respecting land may be as obligatory upon the parties to it as a written contract, where they make no objections themselves that it is not in writing; and in equity a defendant cannot avail himself of the Statute of Frauds unless he pleads it. (*Kelly* v. *Kendall*, 118 Ill. 650; *School Trustees* v. *Wright*, 12 id. 432). But the defense of the Statute of Frauds is personal, and cannot be made by persons who are neither parties nor privies to it. It does not lie in the mouth of a third person to object for the parties to a contract, that they are not bound by its terms because it is verbal. (*Chicago Dock Co.* v. *Kinzie*, 49 Ill. 289; *Kelly* v. *Kendall, supra*). The question is not, whether, in this action of assumpsit brought by appellant against appellees

for commissions, proper objection was or was not made to the proof of the contract as not being in writing. The question is whether, in a proceeding to enforce the contract by either of the parties thereto, a plea of the Statute of Frauds would have defeated such enforcement. If the contract is of such a character, that the vendee can successfully plead the Statute of Frauds against its performance in a suit therefor by the vendor, then it is not a valid contract entitling the broker to his commissions within the rule already laid down.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*