### A. L. Carter v. Marietta B. Simpson.

1. REAL ESTATE BROKER—*when entitled to commissions.* A real estate broker in order to recover for commissions must show either a consummation of the sale or the obtaining of a purchaser ready, willing and able to comply with his undertaking of purchase. The mere fact, however, that the contract was within the Statute of Frauds does not preclude a recovery for commissions if a willingness to perform the same is shown.

Action of *assumpsit.* Appeal from the County Court of Macoupin county; the Hon. C. S. WHITE, Judge, presiding. Heard in this court at the May term, 1906. Affirmed. Opinion filed November 27, 1906.

RINAKER & RINAKER and PEEBLES & PEEBLES, for appellant.

BELL & BURTON, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in *assumpsit* by appellant against appellee, to recover the sum of $820 alleged to be due to him as commissions for effecting the sale of appellee's farm. At the close of the evidence for plaintiff, the trial court, on motion of the defendant, peremptorily instructed the jury to return a verdict for the defendant, and then entered judgment upon the same in favor of the defendant, and against the plaintiff for costs. Whereupon the plaintiff prayed and was al-

lowed an appeal to this court. The material facts involved as disclosed by the evidence briefly stated are as follows: Appellee, a widow, owned a farm consisting of 168 acres of prairie land and forty acres of timber land, situated near the village of Medora, which she desired to sell. On September 20, 1904, she authorized appellant to sell the farm for her within thirty days for not less than the sum of $14,780, being $500 for the timber and $85 per acre for the prairie land. It was agreed that in case he made a sale, appellant was to receive as his compensation the sum of $100 and the excess, in case he sold the land for a greater sum than that stipulated in the agreement. On the same day, through the efforts of appellant, assisted by one Chapman, G. C. Yocum, of Jerseyville, agreed to purchase the prairie land for $15,000, which would have entitled appellant, had the sale been consummated, to the sum of $320 and the timber land as his commission. Several days thereafter were expended in the examination and certifying of the abstract of title to the property, and finally, on September 26, 1904, Chapman accompanied by Yocum, called upon appellee at the home of her son-in-law, Dr. Walton, with whom she resided at Medora. After some discussion and negotiation, a written agreement was prepared and signed by appellee and Yocum, which recited that appellee agreed to give Yocum the rent corn "upon all of her farm which she has recently sold to G. C. Yocum, and to turn the entire say of the farm over to Mr. Yocum, and Mr. Yocum agrees to pay the taxes on said farm for the year 1904, and to pay off the six thousand dollar mortgage that is on the place, and the interest on the same for the six months prior to the first of March, 1906." Later on the same day, Chapman and Yocum again called upon appellee and presented to her two deeds, which Chapman had prepared, one conveying the prairie land to Yocum in consideration of $15,000, and the other conveying the timber land to appellant.

The deeds were then executed by appellee and handed by Chapman to Dr. Walton, to be held by him until the next day, at which time Yocum agreed to deposit the balance of the purchase money, $9,000, in the bank at Medora, where the deeds were to be delivered and the money paid over. On the following morning, the 27th, Yocum deposited $9,000 in the bank as agreed. There is evidence that appellee's daughter, Julia Simpson, informed Chapman early that day that he need not expect that the deeds would be delivered. Later on the same day, Yocum called upon appellee who told him that he must await the return of Julia from Carrollton before closing the trade; to which Yocum replied that the money was in the bank, that he was ready to close the transaction and that he insisted that it be consummated on that day. In the evening he withdrew his money from the bank and returned to his home in Jerseyville. Upon the following morning, the 28th, upon her return from Carrollton, where she had taken the deeds for the purpose of showing them to her brothers, with whom appellee was anxious to consult before closing the sale, Julia Simpson went to Jerseyville and tendered to Yocum the deed for the prairie land, which he refused to accept, stating that it was too late.

Counsel for appellant contend that when a real estate agent or broker finds a purchaser for the real estate in question, upon the terms offered, who is ready, willing and able to buy and pay for such real estate, he has earned and is entitled to his commissions. That although such broker has made but an oral contract for the sale of the real estate, which is void under the Statute of Frauds, and which his principal refuses to perform, the broker is nevertheless entitled to his commissions, provided the prospective purchaser was ready, willing and able to comply with his contract. This we understand to be the law. Fox v. Starr, 106 App. 273; Scott v. Stuart, 115 App. 538; Finkelstein v.

Spurck, 115 App. 521. In the cases of Wilson v. Mason, 158 Ill. 304, and Lawrence v. Rhodes, 188 Ill. 101, cited by counsel for appellee, and which were suits brought by brokers against vendors, the sales failed for the reason that the prospective purchaser in each instance refused to perform whereby by reason of there being no enforceable contract between the parties, the vendor without his fault, lost the benefit of the broker's services. We regard the latter cases as clearly distinguishable from that at bar.

There was no particular time specified or designated in the agreement for the purchase and sale here involved, within which appellee was required to consummate the transaction. She was therefore only bound to do so within a reasonable time. Yocum, manifestly, had no right, time not being of the essence of the contract, to select a particular time, and no other, at which he would accept the deed. We do not think that either the neglect of appellee to deliver the deed on the particular day upon which Yocum demanded the same, nor the unauthorized statement of Julia Simpson to Chapman, constituted a refusal on the part of appellee to carry out the contract. We are, however, of opinion that the refusal of Yocum, to whom no apparent substantial injury had accrued, to accept the deed upon the following day, constituted a refusal on his part to perform his contract. To entitle appellant to commissions it was necessary for him to show, either a completion and a consummation of the sale, or that appellee had refused to sell. This he failed to do upon the trial, and the court properly instructed a verdict against him. The fact that Yocum, for no apparent good reason, peremptorily demanded compliance within a particular and limited period, during which he had reason to believe the deed was not in the possession of appellee, and his refusal to accept the deed upon the following day, coupled with the further fact that it does not appear that appellant or his associate made any further effort to induce Yocum to thereafter ac-

cept the deed, we think, tends to show a lack of good faith on the part of both appellant and Yocum.

The action of the County Court was warranted by the law and the evidence, and the judgment will be affirmed.

*Affirmed.*