John V. Fox, Appellee, v. Patrick Ryan, Appellant.

## Gen. No. 14,140.

BROKERS AND FACTORS—*what does not affect right to commissions.* If a broker is the procuring cause of a sale the fact that the purchaser did not carry out his contract but submitted to its forfeiture without fault of such agent, does not defeat his right to recover his commissions.

Assumpsit. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in this court at the October term, 1907. Affirmed. Opinion filed January 18, 1909.

M. HENRY GUERIN, for appellant.

ADLER & LEDERER, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellee, plaintiff below, sued appellant in assumpsit. The declaration contains only the common counts. The defendant pleaded the general issue. The cause was tried by the court, without a jury, by agreement of the parties, and the court found for the plaintiff, assessed his damages at the sum of $4,000, overruled defendant's motions for a new trial and in arrest of judgment, and rendered judgment on the finding.

The argument of counsel for the defendant, appellant here, is mainly confined to a discussion of the evidence and alleged errors of the court, in rulings on propositions tendered to the court as propositions of law. The plaintiff, who is a general broker, testified, in substance, as follows: In March, 1901, he had an interview with the defendant in his, plaintiff's office, in the city of Chicago, and defendant told him that he wanted to sell the stock of the Golden Star Mining Company, in which he had 155,718 shares, for $1.35 per share; that the Annie Laurie Company owned the mine adjoining that of the Golden Star Mining Co., and that the latter company owned the apex of the former, and that it was important to the Annie Laurie Co. to own the Golden Star Company's mine; and plaintiff told him that he, plaintiff, knew the principal owners, Peter L. Kimberly and Louis C. Houck, of the Annie Laurie Co.'s mine, and defendant said that if plaintiff would effect a sale of the stock he would pay him 5 per cent. commission. Plaintiff consequently took the matter up with Mr. Kimberly and Mr. Houck, seeing them numerous times, and, in March or April, he took the defendant to the office of Mr. Houck, with whom defendant was not acquainted, at defendant's request, and showed Mr. Houck some samples from the mine. In from two weeks to a month after plaintiff's first interview with defendant, he had another conversation with defendant, in which the latter said to him, "Inasmuch as we are not going to be able

to get what I really want for this stock from Mr. Kimberly, I won't be able to pay you 5 per cent., but I will pay you $4,000 if the deal goes through," and plaintiff said, "That will be all right, Mr. Ryan, that will be satisfactory. I will accept $4,000. You can go ahead and close up the deal with Mr. Kimberly." Mr. Ryan said he would carry on the deal with Kimberly direct, and that I was to keep in touch with Kimberly and promote his, Ryan's interest, with the view of closing up the transaction.

The plaintiff put in evidence the following letters:

"Chicago, April 4, 1901.

John V. Fox, Esq.,
            City;

Dear Sir: I closed deal with Kimberly last night on the basis I told you about. I leave for Salt Lake City at once, as the deal will have to be closed from that end. I expect to be back in about two weeks.

Yours truly,

Pat Ryan."

"Chicago, March 27, 1901.

John V. Fox, Esq.,
            City;

Dear Sir: I just received a letter from my foreman at the mine saying the property was looking very much better, and that he was taking out very high grade ore out of a new place. If you see Kimberly or Houck before returning from Pittsburg do not talk price until you see me. I am writing my associate in St. Paul now. I am of the opinion they will not sell at present price.            Yours truly,

Pat Ryan."

"Salt Lake City, June 18, 1901.

John V. Fox, Esq.,
            Chicago, Ills.

My Dear Sir: Your favor of the 14th inst. just received and contents noted. In reply would say Mr. Kimberly did not make the second payment on the Golden Star property which was due on June 8th.

On that day he come and wanted ninety days more

time. I refused to grant the request unless he would pay down some more money. This he would not do, so we called the deal off. Houck would not go in with him on the deal. I have put some men to work on the property, and I expect to leave for Chicago some time next week and will call and see you.

Respectfully,

PAT RYAN."

Thomas E. Fox, a brother of the plaintiff, testified, in substance, that he was present in plaintiff's office when a conversation occurred between defendant and plaintiff, and heard defendant say that if the deal went through, he would pay plaintiff 5 per cent. commission; and that, about two weeks after the conversation last mentioned, he heard defendant say to plaintiff that "he would pay him $4,000 if the deal went through," and plaintiff said that was satisfactory. It appears from the evidence of Mr. Ryan, called by plaintiff, that he, a Mr. Conley and a Mr. Ham, owned the stock of the Golden Star Mining Co., in all about 156,000 shares, and that they sold it to Kimberly for about $200,000; and the defendant testified, when called as a witness on his own behalf, that only $5,000 of the purchase money was paid by Kimberly, and that they declared the contract forfeited, in accordance with its terms.

The defendant, Patrick Ryan, testified, in substance, that he never promised to pay plaintiff $4,000 if the deal should go through, and contradicted the plaintiff's evidence in other material matters. In this conflict of the evidence, it was for the court to decide on which side the greater weight of the evidence was, and we do not think the court erred in finding that it was on the side of the plaintiff. If the plaintiff was the procuring cause of the sale, as the court found, the fact that Kimberly did not carry out his contract, but submitted to its forfeiture, without fault of the plaintiff, does not defeat plaintiff's right of recovery. Wilson v. Mason, 158 Ill. 304. It does not appear that

Kimberly was financially unable to make the deferred payment on his contract, if this were material.   He may, for aught appearing, have concluded that he had made a losing contract, and that he would save money by allowing it to be forfeited.

Counsel object to the refusal of the court to hold as law defendant's propositions 1, 7 and 9.   Proposition 1 is that the plaintiff is not entitled to recover.   Propositions 7 and 9 are as follows:

"No. 7.   The court holds that a broker is not entitled to commission where a party whom he introduces as a buyer enters into a contract, which contract gives him the option to withdraw by forfeiting the earnest money, which course he pursues."

"No. 9.   The court holds that if the defendant did not hear from said plaintiff relative to a customer for his property for a period of six months, then the defendant had a right to consider that the plaintiff had abandoned all negotiations for a sale of the property in question and was entitled to take up negotiations with any prospective customer with whom negotiations might have been carried on by said defendant."

The propositions are not the law and were properly refused.

Counsel also object to the modification by the court of propositions 2, 3 and 5, presented by the defendant, and the giving them as modified.   We find no reversible error in the court's action in respect to said propositions. .

The judgment will be affirmed.

*Affirmed.*