410

WILLIAM KEPPER *et al.*, d/b/a William Kepper Associates, Plaintiffs-Appellants, *v.* MORRIS CATV, INC., Defendant-Appellee.

Third District   No. 76-496

Opinion filed April 29, 1977.

John J. Corbett, of Rosenberg & Savner, of Chicago, for appellants.

Paul E. Root, of Root Law Office, of Morris, for appellee.

Mr. PRESIDING JUSTICE ALLOY delivered the opinion of the court:

William Kepper and Ken Anderson, d/b/a William Kepper Associates, appeal from a judgment of the Circuit Court of Grundy County granting defendant Morris CATV, Inc., motion for summary judgment in an action for brokerage commissions instituted by Kepper and Anderson. On appeal in this court, plaintiffs contend that the trial court erroneously entered summary judgment for defendant (1) because there was no genuine issue of material fact and plaintiffs were therefore entitled to summary judgment as a matter of law, or (2) in the alternative, for the reason that there exists a genuine issue of material fact sufficient to preclude entry of summary judgment for either party.

Plaintiffs Kepper and Anderson were engaged in the business of brokerage and sale of media systems, specifically cable television systems. Defendant Morris CATV, Inc. (hereinafter called "Morris"), operates a cable television system serving Morris, Illinois, and the surrounding area. On January 9, 1975, a brokerage contract was executed by Paul Splain, president and majority shareholder of Morris, on behalf of Morris CATV, with Ken Anderson acting on behalf William Kepper Associates. The agreement gave plaintiffs the exclusive right to procure a sale of the capital stock or assets of the defendant Morris, and specified a purchase price of $650,000 on terms described as "negotiable."

Prior to March 10, 1975, plaintiffs Kepper and Anderson learned that Richard Treibick was interested in purchasing the Morris stock or assets, and the brokers informed Morris of Treibick's interest. On March 10, 1975, plaintiff Anderson met with Richard Muench, a shareholder in Morris, who was Paul Splain's banker, and the two discussed the terms for the sale of Morris stock or assets to Treibick. On March 11, 1975, the agent for Morris, plaintiff Anderson, communicated by letter to Morris, in a letter marked "confidential" and which plaintiffs seek to characterize as an offer by Treibick for purchase of the Morris assets by Treibick or a subsidiary company to be formed by him. The letter set forth terms of $175,000 in cash at the time of closing, with the balance of $475,000 payable with interest over eight years secured by a first mortgage lien. The letter was not signed by Treibick. Broker Anderson had stated that he had communicated with Treibick prior to submitting the letter. On March 17, 1975, the letter was signed "Accepted: Morris CATV, Inc. by Paul G. Splain." An executed copy of that letter was returned to plaintiffs-brokers. The letter of March 11 was in the following form:

"Confidential                                    March 11, 1975

Mr. Paul Splain
Morris CATV, Inc.
111 East Jackson
Morris, Illinois 60450

Dear Paul:

Following my meeting with Mr. Richard Muench and subsequent telephone conversations with Mr. Richard Treibick, we are submitting the following offer for Mr. Treibick, or a subsidiary company to be formed by him, to purchase the assets of Morris CATV, Inc., free and clear of all obligations as follows:

1. $175,000 cash at closing.

2. The balance of $475,000 payable in 8 years at 7%. This will be paid in equal installments on a 10 year schedule, with the remaining principal paid in year 8.

3. This balance will be secured by a first lien mortgage held by you.

4. Mr. Treibick will use his best efforts to promulgate a stock purchase. If he can not, he will pay you the same gross amount each period, as in (2) above, but allow you to allocate as interest, 5%.

5. Upon a satisfactory inspection, Mr. Treibick will place $5,000 earnest money, to be applied to the down payment at closing, with William Kepper Associates Escrow Account at the State National Bank, Evanston, Illinois, within 10 days of your acceptance of this offer.

6. The closing will be held within 60 days of receipt of this earnest money.

This offer is good through March 21, 1975, and is subject to the normal requirements of suitable inspection, contract preparation, legals and accounting. This letter supercedes our offering letter of March 7, 1975.

If you concur with the offer, please sign both copies of this letter, returning one to us.

Respectfully submitted,

/S/ KEN ANDERSON

Kenneth D. Anderson"

As noted from the copy of the letter sent by the broker to the principal, Morris CATV, in paragraph 4 it is stated specifically "Mr. Treibick will

use his best efforts to promulgate a stock purchase. If *he* can not, *he* will pay you the same gross amount each period, as in (2) above, but allow you to allocate as interest, 5%." (Emphasis added.) Paragraph 5 contained a provision that "Upon a satisfactory inspection, Mr. Treibick will place $5,000 earnest money, to be applied to the down payment at closing, with William Kepper Associates Escrow Account at the State National Bank, Evanston, Illinois, within 10 days of your acceptance of this offer." The letter from the brokers also contains language specifying that the offer was "subject to normal requirements of suitable inspection, contract preparation, legals and accounting."

On April 7, 1975, representatives of the defendant Morris, Treibick and his associates, and the plaintiffs, met for the purpose of negotiating a definitive contract for the purchase. At that meeting Treibick immediately announced that he would not individually purchase the stock or assets of the defendant-Morris, but initiated discussions for the purchase of all of defendant's stock by Sampling Research Corporation, which was apparently a corporation in existence, controlled by Treibick, which had as its sole asset, an operating loss carry-forward. While Treibick indicated he was willing to make a capital contribution to Sampling sufficient to cover the initial cash payment for the purchase, contrary to the "confidential" letter from defendant's broker, Treibick stated that he would not personally guarantee any of the acquisition indebtedness in the proposed purchase by Sampling. As a result of the April 7 meeting, Sampling executed an offer to purchase which followed the terms of the March 11 letter with the exception that Sampling (which had as its sole asset an operating loss carry-forward) was to be the sole purchaser and obligor. The offer was left with the counsel for Morris, to be accepted within 24 hours, or to lapse after that period. The offer was never accepted.

On July 22, 1975, plaintiffs-brokers filed their complaint in this cause, seeking to recover a broker's commission from defendant Morris in the amount of $33,500. On August 16, 1976, the trial court granted summary judgment for defendant and denied plaintiffs' motion for summary judgment.

■■■ The supreme court of this State has outlined the basis for a test to determine the propriety of summary judgment. In *Farmers Automobile Insurance Association v. Hamilton* (1976), 64 Ill. 2d 138, 141-142, 355 N.E.2d 1, the supreme court stated:

> "In *Econo Lease, Inc. v. Noffsinger*, 63 Ill. 2d 390, 393, we said: 'A motion for summary judgment will be granted if the pleadings, depositions, admissions and affidavits on file reveal that there is no genuine issue as to any material fact and that the movant is entitled to a judgment or decree as a matter of law. (Ill. Rev. Stat. 1975, ch.

110, par. 57(3); *Carruthers v. B. C. Christopher & Co.*, 57 Ill. 2d 376.) A reviewing court must reverse an order granting summary judgment if it is determined that a material question of fact does exist.' "

In the instant case, there appears to be no disputed question of material fact. As stated in *Peltz v. Chicago Transit Authority* (1st Dist. 1975), 31 Ill. App. 3d 948, 951, 335 N.E.2d 74:

> "* * * Merely alleging that a genuine issue of material fact exists without presenting any statement of fact to contradict the defendants' version, does not thereby create such an issue. *Giampa v. Sunbeam Corp.* (1966), 68 Ill. App. 2d 425, 216 N.E.2d 233; *Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497.
>
> If there are no facts in dispute, inferences may be drawn from the undisputed facts to determine if the defendant is entitled to judgment as a matter of law. If no fair-minded person could draw different inferences from these facts, then there is no triable issue and the motion for summary judgment should be granted. (*Southland Corp. v. Village of Hoffman Estates* (1970), 130 Ill. App. 2d 311, 264 N.E.2d 451.) This does not prejudice the party against whom judgment is granted since the same undisputed facts would support entry of a judgment at the conclusion of that party's case."

The undisputed facts of this case establish that plaintiffs were engaged as brokers in the manner as set forth heretofore and that Treibick was located as a prospective purchaser who entered into negotiations with defendant. It is clear, also, that no sale was ever consummated.

■■ The Illinois Supreme Court has outlined the obligations of a broker in the situation such as we have in the instant case in *Wilson v. Mason* (1895), 158 Ill. 304, 309-10, 42 N.E. 134, where the court stated:

> "The duty of a broker, who is employed to sell real estate, is to find and produce to the vendor a purchaser, who is ready, willing and able to complete the purchase as proposed. This he must do before he is entitled to any commissions. If the vendor rejects the purchaser so produced, the broker is bound to show that such purchaser was willing, ready and able to perform the contract according to the proposed terms. If the principal accepts the purchaser thus presented, either upon the terms previously proposed or upon modified terms then agreed upon, and a valid contract is entered into between them, the commission is earned. In such case, the broker has earned his commission although the sale is never actually completed, if the failure of the purchaser to

complete the sale results from the inability of the vendor to make a good title, and without fault on the part of the broker."

■■ More recently, in *Western Pride Builders, Inc. v. Zicha* (1st Dist. 1974), 23 Ill. App. 3d 770, 773, 320 N.E.2d 181, the court observed with respect to real estate brokers:

> "The law governing the relation between an owner of real estate and a broker is well settled. An owner cannot, in the midst of negotiations, withdraw the agency and thereby deprive the broker of his commission. [Citations.] A real estate broker who by the terms of his employment brings an able and willing purchaser to the owner cannot be deprived of his commission simply because the owner completes the transaction himself, or through another broker, even though the sale is under different terms. [Citation.] Of course, to establish his right to a commission, the broker must prove he procured a prospective purchaser who was ready, willing and able to buy at the price fixed. [Citation.] But if the owner approves of or enters into a contract with the purchaser, the readiness, willingness and ability of the latter is no longer open to question and the broker's right to compensation accrues whether or not the sale is completed. [Citation.]"

We find it is clear from the record that no binding contract was ever entered into for the sale of the Morris stock or assets in the instant case. While Anderson's letter of March 11 was phrased as an offer by Treibick, Anderson was apparently only merely orally authorized to make an offer. Thus, under the Statute of Frauds (Ill. Rev. Stat. 1975, ch. 59, par. 1), Morris' acceptance of that letter did not create any enforceable rights as against Treibick or anyone else.

Plaintiffs additionally argue that Treibick was ready, willing and able to purchase on Morris' terms, that the acceptance of the March 11 letter by Morris precludes consideration of Treibick's readiness, willingness and ability to perform, and that, therefore, plaintiffs are entitled to their brokerage commission. We note, however, that the March 11 letter concluded that the offer was subject to normal requirements of suitable inspection, contract preparation, legals and accounting. The March 11 letter also specified payment of $5,000 earnest money by Treibick into plaintiffs' escrow account and no such payment was ever made. We have also noted in paragraph 4 of the letter it was stated that Treibick was to use his best efforts to promulgate a stock purchase and that if he could not *he* (Treibick) would pay the same gross amount each period as specified for the payment of the $475,000 balance and allow the payment of interest at 5%. Paragraph 5 also provided that the earnest money payment would be made by Treibick upon a satisfactory inspection.

We note, also, that Treibick, at his first meeting with the representatives of Morris, stated that he would not purchase the stock or assets of defendant and sought to initiate discussions for purchase of the stock by the Sampling corporation. Treibick stated he would not guarantee any of the indebtedness which the corporation would have to defendant if that transaction was undertaken.

In an analogous situation, as stated in *Cabry v. Ionidas* (3d Dist. 1970), 122 Ill. App. 2d 167, 172, 258 N.E.2d 45:

> "The basic question before the court, therefore, is whether the defendant waived the right to question whether the purchaser furnished by the broker was ready, willing, and able to buy the property when the purchaser signed the acceptance notation at the bottom of the preliminary agreement. There was no other act which defendant had done which in any way showed any waiver other than the execution of the document which was tendered to defendant by the broker. * * * A contract of the type which was involved in this case must, if possible, be construed to give effect to the intention of the parties [citations]. The instrument must also be construed most strongly as against the author, the broker [citation].

In the instant case, it is clear that defendant Morris' signature to the March 11 letter from its own broker, did not constitute final acceptance of the proposed terms or final approval of the purchaser. In view of the generality and the conditional nature of the letter and in light of the subsequent conduct of Treibick and the parties, it is apparent that the letter was simply a formal expression of interest of the parties in furthering negotiations with Treibick in an attempt to reach a final binding agreement for sale. As we noted in *Cabray v. Ionidas*:

> "We are aware that there have been many general expressions to the effect that when the broker has obtained the signature of an owner to a purchase and sale agreement he has earned his commission. This is not, and cannot be the rule in all cases. We are cognizant of the method by which most sales of real estate are made in the State of Illinois. A proposal to purchase is obtained from a prospective purchaser and the broker then seeks to obtain the signature of the seller for the purpose of expediting the transaction. If an acceptance is made subject to certain terms and conditions specified in the agreement, and those terms and conditions require payment of a cash down payment, there is obviously a conditional acceptance. Unless there is a waiver on the part of the seller, there is no sale agreement completed, unconditionally, which would entitle the broker to his commission. * * * Under the circumstances present in the instant case, however, where the purchasers were presumably unknown to the

seller and where the arrangements for sale were made as shown by the record, it is obvious that there was no waiver of the condition as to payment of the cash sum required to be paid." 122 Ill. App. 2d 167, 176-77.

■■ As we have noted in the instant case, the principals apparently met Treibick for the first time on April 7, 1975, at a meeting which failed to produce any final agreement mutually acceptable to Morris or Treibick. There is no indication in the record, and plaintiffs do not argue, that Morris acted unreasonably or arbitrarily in the negotiations so as to prevent a final agreement between the parties. Since the conditions imposed by the plaintiffs in the March 11 letter of "suitable inspection, contract preparation, legals and accounting" and the payment of $5,000 earnest money by Treibick, were never satisfied and were never waived by defendant Morris, there was no final agreement or approval which entitled plaintiffs to their commission.

In view of the fact that there were no genuine issues of material fact and on the basis of the record in this cause, we conclude that the judgment of the Circuit Court of Grundy County should be and is, accordingly, affirmed.

Affirmed.

SCOTT and BARRY, JJ., concur.