WILLIAM HAFNER

v.

J. B. HERRON, for use, etc.

*Filed at Ottawa November 9, 1896—Rehearing denied March 6, 1897.*

1. BROKERS—*broker need not actually introduce the purchaser to his principal.* A broker employed to sell property, who in good faith induces a party to go to his principal, is entitled to a commission if a sale is effected to such party through his efforts or information derived from him, though he does not personally introduce the purchaser to his principal.

2. SAME—*broker entitled to commission though principal effects a sale on his own terms.* Where a principal consummates a sale of his property to a purchaser sent by his broker, on different terms than those which he proposed to the broker, the latter is not thereby deprived of his right to commission.

3. SAME—*broker acting in bad faith is not entitled to commission.* A broker concealing the real purchaser from his principal, thereby inducing him to sell at a less price than he would have done had the purchaser been disclosed, is not entitled to a commission though no fraud was intended,—not because of the injury to his principal, but from considerations of public policy.

4. APPEALS AND ERRORS—*one cannot complain of error in opponent's instructions where his own contain the same error.* Where a plaintiff's instructions upon his right to recover commission from the defendant for a sale of property omit the element of good faith and loyalty to the defendant, the latter cannot complain of such error where his own instructions are chargeable with the same defect.

*Hafner v. Herron,* 60 Ill. App. 592, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. ARTHUR H. CHETLAIN, Judge, presiding.

This is an action of assumpsit, brought by the appellee, Herron, against the appellant, Hafner, to recover certain commissions, alleged to be due from the appellant to the appellee for a sale of certain shares of stock by the appellee for the appellant. The declaration alleges, that the appellant owned 251 shares of stock in a corporation known as the Hartt Manufacturing Company, and

made an agreement with appellee, that, if appellee would negotiate and sell said shares of stock, appellant would pay him five per cent on the first $10,000.00 of the purchase money and two and a half per cent on the balance; that appellee accepted the conditions of the agreement and sold the stock. The plea was the general issue. The case was tried before a jury and resulted in verdict and judgment in favor of appellee. Upon appeal to the Appellate Court the judgment has been affirmed, and the present appeal is from such judgment of affirmance.

The material facts are as follows: The Hartt Manufacturing Company was engaged in manufacturing soda fountains under a patent owned or obtained by appellee; appellee had been selling these soda fountains on commission, and had been connected with the appellant in business for more than four years; appellant owned a controlling interest in the company; appellee's wife owned some stock, and one Herman Huff and one Herman Will were also stockholders therein. There was some dissatisfaction among the stockholders with the policy of the appellant. Appellee proposed to sell his wife's stock to appellant, but appellant refused to buy, and said that he would sell out his own stock, and authorized appellee to get a man to buy him out. Early in July, 1894, appellee brought to appellant a man by the name of Stein, who, after examining the books and stock, offered $45,000 for appellant's interest; but appellant refused to take this sum, and the purchase was not made by Stein.

Afterwards appellee wrote to one Charles W. Tufts of Boston, proposing to him to buy appellant's interest. About the first of September Tufts came to Chicago and had an interview with Herron and Will and Huff. At that interview it was arranged, that Huff should go to appellant and make the purchase. Huff testified, that, at that conversation between him and Tufts and Herron as to the purchase of the stock, it was said that, if Hafner should know that Tufts was buying the stock, he

would not sell out so leniently, and by making Hafner believe that he, Huff, wanted the stock for his friends, or by letting him think so, that the deal would be sooner consummated. On September 4, 1894, Huff went to appellant, and submitted a written proposition or contract, which appellant signed, and in which it was stated that appellant received of Huff $2000.00 on account of the purchase price of $45,000.00 for said 251 shares of stock, and in full of the amount due on open account as shown on the books, and that the balance of $43,000.00 was to be paid to Hafner on September 8, 1894; and therein appellant agreed to transfer his stock to whomsoever Huff might direct; and it was also therein provided, that if the $43,000.00 should not be paid on or before that date, the $2000.00 should be forfeited to appellant, and the agreement terminated; and that the business was to be taken by Huff, or his assignee of the stock, as shown by a statement therein mentioned; and that, if the assets and liabilities should not be found as reported by such statement, then the $2000.00 should be returned to Huff, etc. When this paper was signed by appellant, he did not know that Tufts proposed to buy the stock, or that any negotiations were pending with Tufts; nor had he at that time been informed, that Herron had anything to do with the purchase proposed to him by Huff. Afterwards, on or about September 8, Herron brought Tufts to appellant, and introduced him to appellant, and Tufts said that, if appellant would go with him, he would pay the balance of the money. Tufts did pay said money to appellant, and the sale of the stock to Tufts was thus consummated for the sum of $45,000.00.

E. S. CUMMINGS, for appellant:

A real estate broker employed to find a purchaser for land is bound to disclose to his principal any facts known to him, material to the transaction. *Young* v. *Hughes*, 32 N. J. Eq. 372.

The intentional concealment of important facts by a broker from his principal, when selling real estate, will deprive him of his right to procure a buyer. *Pratt* v. *Patterson's Exrs.* 112 Pa. St. 475.

Where an agent is unfaithful to the trust and abuses the confidence reposed in him by his principal, he may be deprived of commission or compensation. *Sea* v. *Carpenter*, 16 Ohio St. 412.

The dealings of an agent with his principal will not, in any case, be deemed binding on the principal unless they are accompanied with the utmost good faith on the part of the agent. 1 Evans on Principal and Agent, 378; Wharton on Agency, sec. 336.

WILLIAM R. EVERETT, for appellee:

It is not indispensable that the purchaser be introduced to the owner by the broker, nor even that the broker himself should be personally acquainted with the purchaser. *Sussdorf* v. *Smith*, 55 N. Y. 320; *Stewart* v. *Mather*, 32 Wis. 334; *Cook* v. *Fischer*, 12 Gray, 491; *Lincoln* v. *McClatchie*, 82 Conn. 136; *Carter* v. *Webster*, 79 Ill. 435.

It must affirmatively appear that the purchaser was induced to apply to the owner through the means employed by the agent. *Greggs* v. *Bow*, 43 N. Y. 324; *Sussdorf* v. *Smith*, 55 id. 320.

If the purchaser had his attention directed to the premises through the advertisement of the broker, the latter is entitled to his commission although the purchaser did not see the broker or go to his office. *Lincoln* v. *McClatchie*, 32 Conn. 136; *Dirkie* v. *Railroad Co.* 29 Vt. 127; *Ellis* v. *Dunsworth*, 49 Ill. App. 187.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the court:

It is claimed by appellant, that, after the failure of the proposed sale of the stock to Stein, he revoked his authority previously given to appellee to sell the stock as

his agent, and that thereafter appellee had no authority to act as his agent in that regard. On the contrary, it is claimed by appellee, that, after the failure of the negotiations with Stein as well as before, he was still instructed by appellant to procure a purchaser for the stock, and was told that, if he did so, he would be paid the commission mentioned in the declaration. The main issue of fact upon the trial in the court below was, whether or not appellee was authorized to act as the agent of the appellant in negotiating the sale which was finally consummated. The parties to the suit contradicted each other upon the question of fact as to whether appellee was agent or not. The instructions on both sides, as given to the jury by the trial court, submitted the question of the existence of such agency.

The appellant now raises a new question not relied upon in the trial court. The new contention is, that appellee was guilty of a want of good faith towards appellant in his negotiations with Tufts for the sale of the stock, and that, on account of such want of good faith, he is not entitled to claim any commissions. There is evidence in the record, which would have justified the submission of the question of good faith to the jury under proper instructions. The fact, that the appellee employed Huff to aid him in the consummation of the sale, was not of itself evidence of a want of good faith. One broker may assist another in making a sale. (*Carter* v. *Webster*, 79 Ill. 435). Nor is it always necessary, that the purchaser should be actually introduced to the owner by the broker, provided it appears affirmatively, that the purchaser was induced to apply to the owner through the instrumentality of the broker, or through means employed by the broker. It is sufficient if the sale is effected through the efforts of the broker, or through information derived from him. (*Sussdorf* v. *Schmidt*, 55 N. Y. 319; *Stewart* v. *Mather*, 32 Wis. 344; *Lincoln* v. *McClatchie*, 36 Conn. 136). It is also true, that, where the seller consummates

a sale of property upon different terms than those proposed to his agent, the latter will not be thereby deprived of his right to his commissions. (*Stewart* v. *Mather, supra*). But it is well settled, that if an agent or broker is employed to transact a particular piece of business, and in the transaction is guilty of bad faith to his principal, he thereby forfeits his commissions. (Wharton on Law of Agency, sec. 336.) It is said by Story in his work on Agency, that "the agent is entitled to his commissions only upon a due and faithful performance of all the duties of his agency in regard to his principal." (Story on Agency, sec. 331). There is a want of good faith on the part of the agent towards his principal, when he acts adversely to his principal's interest, or where, representing the seller, he conceals from him an arrangement intended for the advantage of the buyer. (Story on Agency, sec. 334; *Pratt* v. *Patterson's Exrs.* 112 Pa. St. 475; *Prescott* v. *White*, 18 Ill. App. 322). In the application of this rule it makes no difference whether the result of the agent's conduct is injurious to the principal or not; in such case, the misconduct of the agent affects the contract from considerations of public policy rather than of injury to the principal. "It matters not, that there was no fraud meant, and no injury done. The rule is not intended to be remedial of actual wrong, but preventive of the possibility of it." (*Young* v. *Hughes*, 32 N. J. Eq. 372). In the present case, if by a preconcerted arrangement between appellee and Huff and Tufts, the fact, that Tufts was to be the purchaser, was concealed from appellant with a view of inducing him to sell the stock to Tufts at a less price than he otherwise would have done, then appellee was not faithful to his obligations as appellant's agent. While he was acting in the interest of appellant, it was his duty to obtain as high a price as possible for the stock. He could not be permitted, under the law, to seek to serve the interest of Tufts, the purchaser, by bringing about a sale at a reduced price. In such case he would be acting

both for appellant and for Tufts.    It is well settled, that
the same man cannot act at the same time as agent for
both seller and buyer.    His duty to one is inconsistent
with his duty to the other.    (*Warrick* v. *Smith*, 137 Ill. 504;
*Stewart* v. *Mather, supra;* Wharton on Agency, sec. 715).

But it appears from the evidence, that, after the writ-
ten memorandum presented by Huff was signed, appellee
came with Tufts to appellant, and presented Tufts as the
purchaser of the property.    Appellant thereby became
informed, before the sale was consummated by the pay-
ment of the $43,000.00, that Tufts was the purchaser of
the stock, and that Herron was concerned in securing
him as a purchaser.    Notwithstanding the knowledge
thus obtained, appellant made no objection to the sale,
but carried it out as already arranged, and received the
$43,000.00.    He might have then repudiated the sale.    If
there was any misconduct on the part of the appellee,
Huff and Tufts incited it, and were partakers in it, and
obtained the contract by means of the misconduct which
they had thus suggested and aided.    Under such circum-
stances, they could not have asked a court of equity to
exercise its discretionary powers to enforce the contract
so obtained.    (*Young* v. *Hughes, supra*).    While, therefore,
the evidence discloses certain circumstances, from which
a want of good faith on the part of the appellee towards
appellant might be inferred, yet it also discloses the fact,
that appellant, after knowledge and information of those
circumstances, neglected to exercise his privilege of can-
celing the contract, but, on the contrary, accepted the
benefit of what appellee had done.

Appellant's counsel contends, that, at the close of all
the testimony, the court should have instructed the jury
to find for the defendant.    No written instruction to that
effect was submitted to the court.    But if a mere verbal
motion to instruct for the defendant was sufficient with-
out the submission of a written instruction to that effect,
the court would not have been justified in taking the

question of good faith away from the jury. The evidence was not conclusive as to a want of good faith, and there were circumstances in favor of, as well as against, the appellee upon that issue. This being so, it was for the jury to weigh the evidence and ascertain where the preponderance was. (*Wenona Coal Co.* v. *Holmquist*, 152 Ill. 581). Hence, it would have been proper to instruct the jury to find whether or not appellee was guilty of any misconduct towards appellant in the matter of the negotiation of the sale.

But neither party asked any instruction from the court upon the subject of the good faith of appellee in making the sale. The appellant asked only two instructions which were both given. By the first of these the jury were told, that, before a principal can be bound by the acts of his agent, it must be shown by the party asserting such agency that the principal authorized such agent to act for and on his behalf, and that such agent carried out the business of his principal and within the scope of his authority as such agent; and that, to entitle the plaintiff to recover in this case, he must show by a preponderance of the evidence that he was acting as such agent under the direction and authority of the defendant. By the second of the instructions given for appellant, the jury were told that, in this action by the plaintiff against the defendant for commissions claimed by the plaintiff for the sale of certain shares of stock, the plaintiff, in order to secure a recovery, must show by a preponderance of the evidence, that he acted in the capacity of agent for and on behalf of such principal in securing such sale with the knowledge and consent of the defendant. It will be noticed, that these instructions do not direct the jury to find whether or not the defendant acted in good faith, and in loyalty to the interests of his principal in the performance of his agency, but merely to find whether or not he was appellant's agent, or had any right to act for him in the capacity of agent. The verdict of

the jury and the judgments of the lower courts are, so far as this court is concerned, final determinations of the fact, that appellee was appellant's agent in making the sale, and acted as such agent under the authority and with the knowledge and consent of appellant. If appellant had desired the jury to find whether or not appellee was guilty of such concealment of material facts, or of any other such misconduct, as would amount to bad faith towards appellant, he should have asked an instruction embodying that idea. The case was not tried upon any such theory, and it is too late now to advance it.

The plaintiff below only asked two instructions, which were given by the trial court. By these the jury were instructed that, where an agreement for the sale of property is entered into, the agent is entitled to his recompense if he brings the owner and buyer together; that, in such case, if the owner, in dealing personally with the buyer, agrees to accept a less sum than that mentioned to the agent, the latter is entitled to recover his commission on the amount accepted by the seller; and that, if the jury believed from the evidence, that an agreement was entered into between the parties, by which plaintiff, as agent of defendant, was to sell certain property owned by defendant and to receive a certain commission in the event of a sale through his instrumentality, and that a sale thereof was consummated with a purchaser procured by the plaintiff, the verdict must be for the plaintiff, even though the defendant accepted a less sum for the property than he had given his agent, unless the jury should believe from the evidence that the said contract, if any, had been terminated by defendant prior to said sale. No valid objection to these instructions has been called to our attention. They announce the law with reasonable correctness. There must be an employment to constitute a broker the agent of a vendor; the services of such broker or agent must be the efficient or producing cause of the sale; it is his duty to find a purchaser for the prop-

erty, to bring the purchaser into communication with his employer, and to use his efforts to forward the negotiation in the interest of his employer; having introduced a sufficient purchaser to the owner, he is not to be deprived of his commissions, because the owner negotiates the contract himself, or voluntarily reduces the price of the property. (*Earp* v. *Cummins,* 54 Pa. St. 394; *Chilton* v. *Butler,* 1 E. D. Smith, 150; *Young* v. *Hughes,* 32 N. J. Eq. 372; *McClave* v. *Paine,* 49 N. Y. 561; *Stewart* v. *Mather,* 32 Wis. 344; *Wilson* v. *Mason,* 158 Ill. 304).

It may be said, that, in view of the evidence, in the record, the court should have so qualified the language of the instruction as to require that the sale should have been consummated, or the purchaser procured, in good faith toward the principal and with a loyal regard to his interests. But, if plaintiff's instructions were defective in this regard, the instructions of the defendant are chargeable with the same defect; and this court is committed to the doctrine, that the defendant has no right to complain of error in an instruction given for the plaintiff, when like error appears in an instruction given at the defendant's request. (*Consolidated Coal Co.* v. *Haenni,* 146 Ill. 614, and cases there cited).

By the judgment of the Appellate Court affirming that of the Superior Court of Cook county it is settled, under the issues presented to the jury, that appellee's authority to negotiate a sale was not revoked after the failure of the proposed sale to Stein and before the consummation of the sale finally made to Tufts.

For the reasons stated, the judgments of the Appellate Court and of the Superior Court of Cook county are affirmed.                          *Judgment affirmed.*