# Singer & Talcott Stone Co. v. Dillon B. Hutchinson and William W. Post, for the use of, etc.

1. REAL ESTATE BROKER—*When Entitled to Commissions.*—A real estate broker who is the efficient and procuring cause of a sale of real property is entitled to his commissions.

Assumpsit, for commissions. Trial in the Superior Court of Cook County; the Hon. ARTHUR H. CHETLAIN, Judge, presiding. Finding and judgment for plaintiffs; error by defendant. Heard in this court at the March term, 1899. Affirmed. Opinion filed July 20, 1899.

IRA W. & C. C. BUELL and A. B. JENKS, attorneys for plaintiff in error.

BARNUM, MOTT & BARNUM, attorneys for defendants in error; THOMAS A. MORAN, of counsel.

MR. JUSTICE WINDES delivered the opinion of the court.

Defendants in error, in a trial before the court and a jury, recovered a judgment of $15,496.33 against plaintiff in error for commissions on a sale of some valuable real estate in Chicago, owned by plaintiff in error. A previous trial before the court without a jury resulted in a judgment in favor of defendants in error, which was reversed by this court (61 Ill. App. 308), it being held that, under the evidence then appearing in the record, the conduct of Post, one of the defendants in error, through whose efforts it was claimed the real estate was sold, warranted the belief by plaintiff in error that he had abandoned all efforts to sell long before the sale was effected, as it was claimed, through the efforts of another broker named Davis. This court there said : "It is not a case of conflicting evidence, but of the proper inference from undisputed facts."

We think that the evidence in this record presents a conflict on material points, and where the facts are undisputed it presents a question as to what inference should be

drawn therefrom, and on this question reasonable and fair-minded persons might well differ in their conclusions.   At least such is the opinion we have reached after a careful and deliberate consideration of the evidence under the guidance of the able and persuasive arguments of the learned counsel.

Defendants in error were partners as real estate brokers, doing business in Chicago, and were employed in January, 1892, by plaintiff in error through its president, E. T. Singer, to find a purchaser for certain valuable real estate in Chicago owned by plaintiff in error.   The agreement was made and business done by William W. Post on behalf of defendants in error.   The consideration to be paid was two and one-half per cent of the selling price.   There is a conflict in the evidence as to whether the contract of defendants in error was that they should make a sale before they would be entitled to their commission, but we are of opinion the preponderance of the evidence is that they were only to find a purchaser who should make the purchase at a price satisfactory to plaintiff in error.   The selling price given by E. T. Singer to Post was $10 per square foot, but that price was then conceded by Singer to be rather high, and he instructed Post, in substance, that if any proposed purchaser did not want to pay that price, he, Singer, would probably make a concession and he would not let the price stand in the way of a sale.   In effect the agreement was that if a sale should be made to any one produced by Post at a price which would be satisfactory to plaintiff in error, then defendants in error would be entitled to their commission.

During the months of March and April, 1892, Post had various negotiations with different persons with regard to a sale of the property, and among others who became interested in the property was a gentleman named Chapin, who resided at Niles, Michigan, and who had an agent in Chicago named Ulm.

The attention of Chapin and Ulm had been directed to this same property by another broker some time in the year 1891, but they did not then become interested in it.

At the time Singer employed defendants in error, he informed Post that a number of other persons had been authorized to sell the property, but that an exclusive agency was not given to any of them, nor were defendants in error to be exclusive agents for its sale.

Post placed in the hands of Ulm and Chapin plats of the property furnished to him by plaintiff in error, and gave them the price of $10 per square foot in the latter part of March or early in April, 1892, and talked with them in regard to the sale of the property. He talked with Ulm about a sale of the property to Chapin as early as February or March, 1892, and before he saw Chapin. There was some discussion between them as to the number of square feet in the property, and Post testifies that Ulm told him, in the presence of Chapin, that they (meaning Chapin and Ulm) had looked at the property and thought favorably of it, but that the price was too high. Also that before the final interview in April, 1892, ended, they (Chapin and Ulm) stated to him that they would consider the matter further, and would communicate with him further about it. They did not make Post an offer for the property at any time and did not communicate further with him about it nor he with them. Chapin looked at the property very soon after that time.

There is a conflict in the evidence as to whether Post gave the name of Chapin to E. T. Singer and Walter Singer, who was the treasurer of plaintiff in error, during the month of April, 1892, but we are of the opinion that a preponderance of the evidence shows that Post did communicate with both the Singers (Walter and E. T.) in April, 1892; that Chapin was a proposed purchaser of the property and that he was represented by his agent, Ulm, in Chicago. Defendant in error Hutchinson, as well as Post, testified that he talked in the spring of 1892 with both the Singers, at different times, about Chapin being a proposed purchaser, and that Ulm was his agent in Chicago. Walter Singer denied these conversations, as did E. T. Singer also at first, but finally admitted that Chapin's name

was mentioned to him by Post as a proposed purchaser in the spring of 1892. Post did not at any time bring Chapin personally in contact with the Singers or with any one representing plaintiff in error.

Early in April, 1892, but after E. T. Singer knew that Chapin was a proposed purchaser, Singer left the city of Chicago, and during the remainder of that month and up to September following, with the exception of a few days at a time, he was absent from Chicago, and during that absence he did not see Post or have any communication from him regarding the property. Also during most of this same time both Chapin and Ulm were also away from Chicago, and so far as appears from the evidence, took no interest in the property.

Some time during the month of September, 1892, a man by the name of Davis, who testified that his business was that of a real estate broker, also testified that he presented the property in question to Chapin for sale; that negotiations were carried on from that time between him and Chapin, and Ulm, acting in behalf of Chapin, which resulted in a contract of sale of the property on December 15, 1892, by plaintiff in error to said Chapin for the sum of $509,178, being at the price of about $8.50 per square foot for the property. This contract was consummated and the property conveyed by plaintiff in error by deed dated January 3, 1893, to Chapin, and Davis says that he received one-half the commission on the sale, of $12,179.45, through a credit given him by Ulm, the other half of the commission going to Ulm. When the deal was closed the whole of the commission was deducted from the purchase price, and Davis executed and gave his receipt to plaintiff in error therefor.

We are satisfied, from a careful consideration of the evidence, that Davis, in the negotiations which he says he carried on for the sale of this property, acted as the agent of Chapin and not of plaintiff in error; that he was furnished with a plat of the property by either Chapin or Ulm, and was used by them as an intermediary to continue the

negotiations which Post had begun between Chapin and
Ulm and plaintiff in error, and that these negotiations
resulted in the sale of the property.

Davis was not a licensed real estate broker at the time,
and we think it apparent from the evidence, though he tes-
tifies that he learned of the property first from Charles G.
Singer, that his attention was first called to the property by
either Chapin or Ulm, and either that they used Davis
merely as a means of purchasing the property at a lower
price, or that Davis was made use of by Ulm to secure to
himself one-half of the commissions for the sale. Davis
contradicts himself in his evidence, and we think the jury
were justified from it and the other evidence in the case,
in concluding that he did not testify truthfully in saying
that he first heard of the property from Charles G. Singer,
and that in the negotiations leading up to the sale he acted
as the agent of plaintiff in error.

Post knew the residence of Chapin was at Niles, Michi-
gan, but did not try to communicate with him after April,
1892. He also knew that Ulm had an office in Chicago, but
it does not appear that he made any effort to see Ulm after
the month of May, 1892, nor to communicate with him.
He says he went several times in April and May, 1892, to
Ulm's office to see him, but was told that Ulm was at his
summer resort. He says that he didn't know that Ulm had
returned to Chicago before September 20, 1892, and didn't
go to Ulm's office in September, October, November or
December, 1892. He says he didn't know where Ulm or
Chapin were during those months. The Singers had an
office during the year 1892, at 175 Dearborn street, Chicago,
very near to Post's office, which was on Washington street,
and they also had another office at 334 Franklin street,
Chicago. From the latter part of September, 1892, until
the property was sold, E. T. Singer was in Chicago, but
Walter Singer's residence was at Duluth, Minnesota, during
the whole of 1892, and he says that during the summer and
fall of 1892, he was in Chicago from one-quarter to one-
half his time. Post was instructed by E. T. Singer to go to

Walter Singer if anything came up in the absence of E. T. Singer during the summer.

After E. T. Singer's return to Chicago in September, 1892, Post made no effort to see either of the Singers with regard to the property until after the sale, which came to Post's knowledge about the time the deed was recorded.

Post says that he relied on Chapin and Ulm's agreement with him, at his last interview with them in April, 1892, to communicate with him and take up the question later, as soon as they had settled definitely regarding the building of some apartment buildings or other buildings that they had planned for, that they were considering at the time of that interview, and that for this reason he did not make any effort to see them during the fall of 1892, and before the sale was effected, and also because he supposed that Singer knew absolutely that he, Post, was dealing with Chapin and Ulm, and that he did not believe Singer would enter into a contract on the property and turn his back on him, Post.

E. T. Singer knew, if not before, as early as December 10, 1892, five days before the contract of sale and twenty-five days before the deal was consummated and the commission to Davis and Ulm was deducted from the purchase price paid by Chapin, that Chapin was the purchaser and that Ulm was negotiating the purchase on behalf of Chapin. He does not say that he ever employed Davis as a broker to make a sale of the property. Walter Singer was not asked anything with regard to Davis' connection with the sale, and Charles G. Singer, who signed the contract of sale and deed to Chapin as secretary of plaintiff in error, was not called as a witness in the case.

E. T. Singer's testimony as to his knowledge of Chapin being a proposed purchaser through Post as early as April, 1892, is contradictory, he insisting at first that he learned of Chapin through Davis in December, 1892; he finally admitted that Post told him of Chapin before he, Singer, left Chicago in April, 1892, but says that when he returned, in September following, and at the time the contract of

sale was made and the deed passed, he had forgotten that Post had ever mentioned Chapin to him.

Post testifies that when he talked with E. T. Singer about the transaction after the deal was closed, Singer said to him that he was peculiarly impressed by the closing of the deal, referring to the matter of Davis' commission being deducted from the purchase price, but it made no difference to him, Singer, and so he allowed it to be done. This is not contradicted by Singer.

While it is true that Post was not very diligent in following up Chapin and his agent, Ulm, so as to effect a sale of the property, we think, from a careful consideration of all the evidence, the jury were justified in concluding from it that Post was really the cause of Chapin becoming interested in the property; that this interest did not die out; that when Ulm and Chapin returned to Chicago in the fall of 1892, they renewed their negotiations with plaintiff in error through Davis, who acted for them and not for plaintiff in error, and that Post was really the efficient and procuring cause of the sale. The fact that plaintiff in error paid a commission to Davis which was divided with Ulm, is not of controlling importance in determining the rights of defendants in error, and E. T. Singer's testimony that when he made and consummated the contract with Chapin he had forgotten that Post had ever mentioned Chapin to him as a prospective purchaser, is not controlling. Singer should not have forgotten so important a matter, and we are of opinion, from a full consideration of his evidence, that the jury was justified in believing that he had not in fact forgotten it.

The evidence tending to show that Post had abandoned the idea of a sale of the property to Chapin, loses much of its importance in view of the fact, which we think the jury was justified in finding from the evidence, that Ulm and Chapin in September, 1892, renewed their negotiations, through Davis as their agent, with plaintiff in error.

Post being the efficient and procuring cause of the sale, he was entitled to his commissions. Short v. Millard, 68

Ill. 292; Carter v. Webster, 79 Ill. 435; Wilson v. Mason, 158 Ill. 304; Day v. Porter, 161 Ill. 235; Hafner v. Herron, 165 Ill. 242; Swigart v. Hawley, 40 Ill. App. 610; Jenks v. Nobles, 42 Ill. App. 33, and Sussdorff v. Schmidt, 55 N. Y. 319.

From a careful consideration of the instructions given, those modified and given, and those refused, we are of opinion there is no reversible error in any of the court's rulings on any of the instructions.

Objections are also made to rulings of the court in the admission and exclusion of certain items of evidence. We think the matters presented are not of sufficient importance to justify special mention in this opinion. We think there was no reversible error in any of the court's rulings on the evidence. Other errors assigned are either expressly waived by the briefs, or are waived by a failure to argue them.

The judgment is affirmed.

SEARS, J., took no part in the decision of this case.