**Frank B. Reed et al., Defendants in Error, v. W. K. Young, Plaintiff in Error.**

**Gen. No. 14,273.**

1. BROKERS AND FACTORS—*how question of procuring cause deter-mined.* Whether brokers seeking to recover a commission for serv-ices rendered in effecting a sale of property were the procuring cause, the effective means of bringing about such sale, is a question of fact to be determined by the jury under the evidence submitted.

2. BROKERS AND FACTORS—*when recovery of commissions not de-pendent upon license.* The right of real estate brokers to recover commissions is not affected by the expiration of their license be-tween the time their services were rendered and the time when the sale was actually made.

Reed v. Young, 146 App. 210.

Assumpsit. Error to the Municipal Court of Chicago; the Hon. FREEMAN K. BLAKE, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1908. Affirmed. Opinion filed January 8, 1909.

SAMUEL J. HOWE, for plaintiff in error.

LEWIS T. ORR, for defendants in error.

MR. JUSTICE BAKER delivered the opinion of the court.

In an action in the Municipal Court, defendants in error recovered a judgment for $675 against plaintiff in error for their commissions as his brokers for bringing about a sale of his apartment building in Chicago to Margaret Dahlmann for $27,000.

The principal ground urged for the reversal of the judgment is, that the evidence fails to show that the plaintiffs' services or efforts were the procuring cause of the sale of defendant's building to Mrs. Dahlmann. From the evidence the jury might, in our opinion, properly find that the facts and circumstances attending the sale of defendant's building to Mrs. Dahlmann and the connection of plaintiffs with such sale were in substance as follows:

In January 1907, defendant listed his building with plaintiffs, real estate brokers in Chicago, for sale or exchange, and agreed in case of such sale or exchange to pay them a commission of two and one half per cent. Mrs. Dahlmann was then the owner of a farm in Wisconsin which she had listed for sale or exchange with Crilly, a real estate broker in Chicago. Plaintiffs, in February 1907, sent Blakey, another broker, to Crilly to submit for them defendant's building to him, with a view of an exchange of the same for the Dahlmann farm. Thereupon Crilly sent for the husband ·of Mrs. Dahlmann; he came to Chicago and was shown defendant's building by Crilly. Crilly notified Blakey that Dahlmann was in town and Blakey communicated that information to plaintiff Reed. Reed then told de-

fendant that Dahlmann was in the city; defendant expressed a wish to meet him and Reed promised to arrange a meeting. Reed saw Blakey and notified defendant that Dahlmann would be at his office at eleven o'clock the next morning. He gave Blakey a letter introducing him, Crilly and Dahlmann to defendant. Blakey met Dahlmann at Crilly's office and the three proceeded to the office of defendant, where Blakey presented the letter of introduction and introduced Dahlmann and Crilly to defendant. The proposed exchange of the Dahlmann farm for defendant's building was discussed and Crilly and Blakey stepped out of the private office of defendant while such trade was under discussion by Dahlmann and defendant. After this meeting defendant sent his brother to Wisconsin to see the Dahlmann farm, and later went to Wisconsin and inspected the farm himself. Defendant had several conferences with Dahlmann in reference to such exchange. Blakey and plaintiffs called on defendant and endeavored to effect such exchange. At one of such interviews defendant said to plaintiff Reed that he was experienced in trading; that they had better let him negotiate with Dahlmann; that they would get together, and that he would take care of plaintiffs.

About March 1, defendant told Reed over the telephone that he was still dickering with Dahlmann; that Dahlmann had told him that he had a cash buyer for his farm; that he had told Dahlmann to sell the farm and buy his building, and that he would keep Reed posted as to the deal. In the latter part of April, Reed again talked with defendant over the telephone and was told by defendant that Dahlmann had sold his farm for cash and was now figuring to buy defendant's building for cash; that he did not know whether they would get together, but that he would keep Reed posted. This was the last communication between plaintiffs and defendant before May 7, 1907, on which day defendant entered into a contract for the sale of his building to Mrs. Dahlmann for $27,000. Crilly

went to California early in March, returned late in April 1907 and learned of the sale of the Dahlmann farm. He then went to defendant to get a cash price for defendant's building. He did not at first disclose who his prospective purchaser was, but before the sale was made he told defendant that it was Mrs. Dahlmann.

It was through the plaintiffs, acting through Blakey, that defendant was brought into communication with Mr. Dahlmann and through him with Mrs. Dahlmann. Defendant took the negotiations with Mr. Dahlmann into his own hands. Through these negotiations he learned that Mrs. Dahlmann had sold her farm and continued the negotiations with the Dahlmanns on the basis of a sale of his building to Mrs. Dahlmann in place of an exchange of it for her farm. While these negotiations were in progress Crilly returned from California, obtained from defendant a cash price for his farm and took part in the negotiations between defendant and the Dahlmanns. Defendant was brought into communication with Crilly by Blakey, acting for the plaintiffs, and the sale was made, not to a new purchaser found by Crilly, but to the party for whom Crilly acted in the negotiations for an exchange.

We think that the question whether the services and efforts of the plaintiffs were the procuring cause, the effective means, of bringing about the sale of defendant's building to Mrs. Dahlmann, was a question of fact for the jury on which their verdict, on the evidence in this record, should not be disturbed. Hafner v. Herron, 165 Ill. 242; Rigdon v. More, 226 id. 382; French v. McKay, 181 Mass. 485.

The license issued to plaintiffs by the city of Chicago to do business as real estate brokers expired April 30, 1907, and from that time until long after the sale and conveyance of defendant's building to Mrs. Dahlmann plaintiffs carried on business in Chicago as real estate brokers without any license. They took no part in the negotiations after April 30. When their

services were rendered they had a license which expired before the sale was consummated. We think that plaintiffs' right to recover was not affected by the expiration of their license between the time their services were rendered and the time the sale was made.

We find no reversible error in the instructions of the court and the judgment will be affirmed.

*Affirmed.*