CHARLES J. STUMPF and Others v. JOHN W. NORTON and Others.[1]

December 19, 1913.

Nos. 18,317—(137).

**Fraud — findings sustained by evidence.**

1. The evidence sustains the findings that no conspiracy existed between defendants to defraud plaintiffs in their purchase of certain real estate and also that no single defendant was guilty of deception, concealment or fraud in the transaction.

**Broker's commission.**

2. Where the purchasers of real estate made a contract direct with the owners to buy at a stipulated price, then knowing that out of such price the owners were to pay commission to a broker employed by the purchasers' agent to assist in negotiating the deal, such purchasers may not, in the absence of fraud or collusion, recover of such owners any part of this commission.

**Same.**

3. The broker under the facts found was entitled to the reasonable commission the purchasers' agent agreed he should have, since the purchasers, knowing of this employment and that he was to have commission out of the purchase price to be paid the owners, nevertheless, without attempting to learn the amount of such commission, made the contract direct with the owners to purchase at a price which they knew included the broker's pay or commission.

**Action for share of commission.**

4. Since the broker rightfully received the whole of the commission, the purchasers cannot recover from those who subsequently were permitted to share it.

[1] Reported in 144 N. W. 469.

**Reformation of contract.**

5. The purchasers, having made a valid contract with the owners to buy the property for a stipulated price, then knowing that such price included the broker's commission, are not in a position to ask a reformation of the contract so as to reduce the purchase price to the net price given in the first instance by the owners to the broker.

Action in the district court for Hennepin county against John W. Norton and nine others to cancel a certain contract for the sale of real estate, that two other contracts be reformed in respect to the price to be paid by the plaintiffs for the real and personal property therein, and to recover $9,000 from the defendants Norton, Samdal, Eichorn, Dreger, Thurman and Thwing. The facts are stated in the opinion. The case was tried before Booth, J., who made findings and ordered judgment in favor of defendants. Plaintiffs' motion for a new trial was denied. From the judgment entered pursuant to the order for judgment, plaintiffs appealed. Affirmed.

*Charles J. Tryon,* for appellants.

*O'Brien, Young & Stone, Roberts & Strong,* and *Wright & Matchan,* for respondents.

HOLT, J.

Action by purchasers of real estate against the sellers and the brokers who negotiated the purchase to cancel one contract and reform another relating to the transaction and to recover $4,000, paid under protest. Plaintiffs appeal from the judgment rendered for defendants.

In March, 1911, the defendants Thurman and Thwing owned the premises known as the Holmes Hotel in the city of Minneapolis. Defendant Thurman died after this action was begun and his executrix has been substituted. Plaintiffs, residents of Milwaukee, who were then negotiating for the lease of a valuable property in Minneapolis assisted by their agent defendant Norton, a real estate broker of St. Paul, learned that the Holmes Hotel was for rent or sale and desired to acquire it. One of plaintiffs directed Norton to buy it for them, if it could be had for less than $140,000 and arranged so that Norton could procure $500 to pay earnest money in case the owners

concluded to sell. Norton, who knew or learned that defendant Samdal, in charge of the real estate brokerage for defendants E. Eichorn & Sons, had had the property for sale, sought Samdal's aid in securing the property for the plaintiffs. Samdal went to the owners and they offered to sell for $135,000 net, but would enter no contract unless $1,000 was paid down. This was reported to Norton. Samdal also stated that since that price was net to the owners a reasonable commission for his firm must be added, and it was agreed that $4,000 was proper. Samdal then got the $500 from Norton and $500 from his firm, and took the contract in his own name. The contract was shown to Norton. He then gave Norton a contract to purchase containing precisely the same terms except the price was $139,000 as agreed. The owners knew that Samdal did not buy for himself and that his commission would have to be added to the price paid by the purchasers. Norton took this contract to plaintiffs at Milwaukee, who at first repudiated his act in buying for them. However they told him he should not lose the earnest money and, finally, three of them returned with Norton, examined the property, secured information as to its value and after interviewing the owners offered them $135,000. The owners refused to consider any price other than $139,000, because they had promised to protect Samdal's commission.

Plaintiffs returned to Milwaukee without deciding on the purchase, but stated that if they should conclude to buy they would notify the parties by a certain time. Within the time set they notified Norton and Samdal to meet them at the Holmes Hotel; and after some dickering, and obtaining more time in which to make the deferred payments, plaintiffs made a contract direct with the owners to pay $139,000 for the property. Previous to closing the deal there was no agreement between Norton and Samdal that the former should have any part of the commission, and the owners did not have any agreement with Samdal that they should receive any more than $135,000 net. Some time after the deal was closed and a considerable portion of the purchase price was paid, Samdal asked the owners for the commission. They demurred to paying all, stating that, since they had been obliged to make concessions as to the time of deferred pay-

ments and had had additional trouble in closing the deal, he ought to be satisfied with $3,500. Samdal consented and at the same time directed them to pay one-half of that sum to Norton, having in the meantime agreed to share with him. The owners paid E. Eichorn & Sons $1,750 and Norton $1,750. Plaintiffs all the time understood that they were not to pay either Norton or Samdal commission, and knew that Samdal expected to be paid by the owners. One of the plaintiffs testified that before the deal was closed he inquired of Norton how much he would get in the way of commission, but Norton then told him he did not know whether he would get anything. Before the last of the deferred payments fell due plaintiffs learned that the owners had given Samdal a net price of $135,000 and demanded a conveyance on payment of that sum. The owners refused, and plaintiffs paid the last $4,000 under protest. The court found that the reasonable value of the property was $140,000 and that $4,-000 was a reasonable commission.

The theory of the case as set out in the complaint was that defendants had conspired to defraud plaintiffs. But we are entirely in accord with the conclusion of the trial court that no conspiracy is shown and further that no one of the defendants was guilty of duplicity or fraud. So that if plaintiffs are to prevail it must be on the ground that the acts of Samdal and Norton constitute a legal fraud notwithstanding their entire good faith.

We see no principle upon which the owners can be held. Plaintiffs all knew that Samdal expected commission out of the purchase price to be paid by them, yet they sought no information either from the owners or Samdal as to the amount. It is worthy of note that plaintiffs practically ignored Samdal or looked upon him as representing the owners. They insisted on dealing with the owners direct and made them offers. And finally closed the deal with the owners, making a contract direct with them. This was on more favorable terms than obtained by Samdal as to time of deferred payments. This, together with the extra time which the owners were obliged to give to the deal, would seem to show good consideration for the increase in the net price first quoted by them, if, indeed, such were needed. And from another view point it would seem but just that

Samdal should reduce the commission they were to pay him out of the purchase price. Furthermore, if plaintiffs cannot question Samdal's right to retain the $4,000, it would seem to follow that he may dispose of it as he sees fit. This statement is made in view of the finding that all defendants acted in good faith, with no intent to make a secret profit at the expense of plaintiffs. We may concede that some of the facts and circumstances tend in the direction of collusion and fraud, but the court found otherwise, and, we think, rightly.

As to Samdal and Norton the action must be determined solely upon Samdal's right to commissions. If he forfeited the right thereto, plaintiffs may recover from Norton who received a part with full knowledge of all the facts. From the start Samdal insisted on commissions. Norton testified: "Before I got a price on it at all, but after different negotiations that he (Samdal) seemed to have, I called there back and forth, he came back and he said, 'I am satisfied I can get that at $135,000 net to the owners, and I will have to add my commission.' 'Well,' I said, 'what will that be ?' and he said, 'Let's say a fair commission, $4,000, make it $139,000' and I said, 'all right; go ahead and get it.' "

Plaintiffs were experienced business men, had dealt in real estate, and were well acquainted with the custom of brokers and real-estate agents to look to their commissions, at least from one side, in every deal. They admit that they suspected Norton was making a handsome thing of it and inquired of him, but claim that he said he was not getting anything, and this was true at the time he was asked. At any rate, they understood perfectly that they were not to compensate either Norton or Samdal. Even if plaintiffs believed that Norton would work gratuitously in this deal, because of some expectation of reward in the other large transactions he had then pending for them, they admittedly knew that Samdal was to receive his pay from the vendors. Knowing that the price they were paying included commissions to Samdal, they evinced not the slightest interest in ascertaining the amount until some time after the transaction was closed.

We are not disposed to relax in any manner the wholesome rule

which requires an agent to be absolutely true to the interests of his principal. Any attempt by an agent to profit by devious, hidden schemes, or to secretly serve the other party to the bargain, or a failure to disclose that which is for the interest of the principal to know, forfeits the right to compensation and calls for a restoration of anything of value thus wrongfully secured. The law exacts the strictest good faith from the agent. His pecuniary interests must not interfere with his duty toward his principal. We are well aware that this does not always hold good in practice. And perhaps it is true that in no field of agency are there more flagrant and frequent infractions of the rule stated than among real-estate brokers. However, that very fact demands rigorous application of the law.

But an agent is worthy of his hire. And the one to pay it is usually the one who has the right to demand the loyal service. It is an anomaly to consider a person the agent of one party to a transaction when such party insists that he shall obtain his reward from the other side. What kind of service ought a man to get who employs an agent to serve his interests in a deal, but insists that the agent look to the other side for his pay? One who thus acts subverts and undermines the principles underlying the efficient, faithful and disinterested service demanded of agents. However, conceding that Samdal was employed by plaintiffs as their agent but was to receive his pay from the sellers of the property, we, nevertheless, think he was entitled to his commission. Plaintiffs employed him, if at all, through Norton. Samdal disclosed everything to Norton. It is well settled that an agent does not forfeit his right to the agreed commission in a real-estate deal, although he has accepted some compensation from the other side, provided his principal knew of this when the transaction was closed. See the cases cited in the exhaustive note to Leathers v. Canfield, 45 L.R.A. 33. Applying this principle here where the so-called employers knew before they bought that the whole compensation of Samdal was to come from the other side, what right have they now to deprive him of his commission, especially since they then were indifferent as to the amount, and the amount is reasonable?

Appellants have cited cases which state the fiduciary duties of agents in apt and forceful language, and as applied to the facts of

each case the result is eminently just. But in none of the cases are the facts similar to those here involved. In Whitehead v. Linn, 45 Col. 427, 102 Pac. 286, the agent induced his principal to enter a contract to buy a lot for $1,250, and then went to the owner and bought the lot himself with his principal's money for $850, without letting her know that he had so done. She was permitted to recover. Deter v. Jackson, 76 Kan. 568, was a case of actual fraud and concealment by the agent of the fact that he was interested with the other purchasers in acquiring the property. This was held to forfeit the commission the seller had agreed to pay him. In Hafner v. Herron, 165 Ill. 242, 46 N. E. 211, the agent prevailed, although there was concealment of a material fact during the negotiations, because the principal learned the true situation before the transaction was closed. So here, before the transaction was closed, appellants knew Samdal's position and that he was to have a commission out of the $139,000 which they agreed to pay for the property. Porter v. Woodruff, 36 N. J. Eq. 174, involved profits made by deception and concealment on the part of the defendant, who because of his intimate friendship with the plaintiff and her deceased husband had undertaken to transact plaintiff's business as his own and without any expectation of pay. The case which comes perhaps the nearest being .authority for plaintiff's contention is Hutchinson v. Fleming, 40 Can. Sup. Court, 134, but it will be noticed that the decision is largely placed on the presence of subterfuge and double dealing on the part of the agent.

As bearing upon plaintiffs' right to a reformation of the contract to purchase so as to make the purchase price $135,000, as well as upon the recovery of damages, it would seem that the rule announced in Tilleny v. Wolverton, 54 Minn. 75, 55 N. W. 822, should be applied. In that case the husband of plaintiff employed defendants to sell a tract of land for her. The agents made a sale, but informed the husband that in order to make it they had agreed with the purchasers to take an undivided one-fourth interest in the land. The deed was given by plaintiff and her husband to one of the purchasers who thereafter conveyed for a large increase in price shared in by plaintiff's agents to whom she had paid commissions. She sued the agents

to recover the secret profits, claiming that she had no knowledge that her agents were interested in the purchase. After stating that it was not necessary that she should have full knowledge of all the details as to the extent of her agents' interest in the purchase in order to conclude her by ratification, the court says:

"The important and material fact for her to know was that her agent was interested as purchaser in the proposed sale of her property, and therefore that his interests did or might conflict with hers. If, with the knowledge of this fact, she saw fit to approve of the sale, deliver her deed, and accept the purchase money without inquiry as to the extent of his interest, or as to the details of the arrangement between him and the other purchasers, she must be deemed to have deliberately ratified upon the knowledge she had without caring for more."

Here plaintiffs, with full knowledge that Samdal was to have commission out of the $139,000, deliberately executed the contract with the owners to pay that price for the property, without seeking any information as to the amount of such commission. Thereby they ratified the acts of Norton in employing Samdal and the terms of employment, and cannot question the validity of their own contract with the owners as to the purchase price therein stipulated. See also Bartleson v. Vanderhoff, 96 Minn. 184, 104 N. W. 820.

From a careful perusal of the testimony we feel confident that the court below disposed of the issues correctly both as to law and facts.

Judgment affirmed.