William H. Francisco, Defendant in Error, v. Leslie Coleman, Plaintiff in Error.

Gen. No. 7,149.

1. BROKERS—*sufficiency of evidence as to right to compensation.* A broker is shown to be entitled to compensation for producing a purchaser for defendant's land by evidence that the defendant listed the land with the broker for a net price and agreed to pay commission if the land was sold to a purchaser procured by the broker, that the broker procured a purchaser who endeavored to exchange other properties for the land and finally bought it through other brokers, where the broker repeatedly notified the defendant that the undisclosed principal of the other brokers was the purchaser he had procured, and it appears that plaintiff had listed the land with the other brokers and solicited their aid in securing a purchaser, that the purchaser never broke off negotiations for the land but continued them through the new brokers and that defendant, although warned by the broker that he would be held for commissions if he sold to the purchaser produced by plaintiff, took no steps to protect the latter.

2. BROKERS—*right to compensation when sale closed by owner.* A broker is entitled to commissions on the sale of land by the owner direct to a purchaser produced by the broker, at a less price than that for which the property was listed with the broker,

even though such price was net to the owner, especially where there is evidence that the owner agreed to pay a commission in case he closed the sale himself to a customer produced by the broker.

Error by defendant to the Circuit Court of DuPage county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1922. Affirmed. Opinion filed August 13, 1923.

GEORGE D. CARBARY, WALTER E. HEALY and G. R. BEVERLY, for plaintiff in error.

CHARLES W. HADLEY, for defendant in error.

MR. JUSTICE JONES delivered the opinion of the court.

William H. Francisco, the defendant in error here, was the plaintiff below in an action in assumpsit against Leslie Coleman. The cause was tried by the court, a jury having been waived by the parties. Judgment for $1,940 and costs was entered in favor of the plaintiff Francisco. The cause is here to be reviewed by writ of error issued at the instance of the defendant.

Coleman, together with his mother and certain other members of his family, was the owner of a farm near Wayne, Illinois, containing 380 acres. Through an arrangement with his associate owners, he appears to have had authority to sell the farm. Francisco is a real estate agent. Sometime in the latter part of November, 1920, he approached Coleman and induced him to list the said farm for sale. There is some disagreement between the parties as to the terms upon which the farm was listed. The defendant claims he was to receive $200 per acre net for the farm. The plaintiff admits that he agreed to accept as his commissions all he received above $200 per acre provided he closed the deal, but if the defendant closed the deal with one of plaintiff's customers, a commis-

sion of two and one-half per cent should be paid. Each of the parties gave testimony in support of his own contention.

The parties talked about the probable necessity of Coleman's taking in other lands as a part of the consideration for the sale of his farm. On December 9, 1920, plaintiff introduced to the defendant Warren S. Lee, as a prospective purchaser. Lee was interested in a tract of land in North Dakota, containing about 1,550 acres. He also owned 120 acres of land near Kaneville, Illinois. This fact was known to the plaintiff and he priced the Coleman land to Lee at $100,000, being approximately $260 per acre. He informed Lee that Coleman would probably take the North Dakota land in trade at $30,000. After Lee had examined the farm he stated that if it were satisfactory to his wife he would take it, provided he could trade in his North Dakota land at $30,000 and his Kaneville farm at $350 per acre.

It is evident from the record that the values placed upon the various pieces of land were what are known as "trading values" and not cash values. Coleman declined to consider a deal on the terms offered by Lee. Plaintiff advised the defendant that he did not consider Lee's proposition a fair one but suggested that the defendant consider taking in trade one of the properties of Lee, and defendant expressed a willingness to do so.

The next day Lee took his wife to see the farm. Several days thereafter Lee told the plaintiff that he would not consider the purchase of the farm unless Coleman would take his two properties in on the trade. About the middle of December, Coleman was driving to Elgin and on the road met a man by the name of Stockwell of the real estate firm of Stewart & Stockwell, of Elgin. Coleman told him he had a farm for sale and Stockwell sought to have him list it with his firm and on December 19, Coleman did so at $200 per

acre, out of which the brokers were to receive a commission. He was informed by Stewart & Stockwell that they had a man interested in the deal. From the conversation, Coleman got the impression that the customer lived in Chicago. The brokers had a number of conversations over the 'phone with Coleman but in none of them did they disclose the identity of their customer. He was referred to as the "mystery man." The customer was none other than Lee. How Stewart & Stockwell became aware that Lee was interested in the Coleman farm as a prospective purchaser is not clear. However, it seems to be well established by the evidence that he had a definite purpose to become the owner of the farm and that he held to that purpose at all times from the 9th of December when the land was shown to him by the plaintiff. His conduct in reference to this transaction does not appear to be commendable. He told the plaintiff that he would not consider buying the land unless he could trade in both of his properties. Sometime during the holidays of 1920 he met the plaintiff on an electric car running between Chicago and Elgin. Plaintiff engaged him in conversation concerning the Coleman land and Lee gave him to understand that he was no longer interested in the subject; that he had dismissed it from his mind and the deal was off. The fact of the matter is that he had not dismissed the deal from his mind but was at that very time negotiating for the purchase of the land through Stewart & Stockwell, Stewart being his nephew.

While Lee was thus endeavoring to buy the land through the firm of Stewart & Stockwell, Coleman told Francisco that some one in Elgin was trying to buy the land and that he suspected it might be Lee, whereupon Francisco told Coleman that if the so-called "mystery man" turned out to be Lee he would expect his commissions as he had produced Lee as his customer. Plaintiff said the same thing to the de-

fendant on one or more occasions after that time and also served defendant with a written notice to the effect that if a deal was closed with Lee, he, the plaintiff, would expect his commissions.

On January 17, 1921, the defendant entered into a contract of sale with Lee and on March 10, 1921, executed and delivered a deed to him, at a price of $200 an acre.

In the above-mentioned conversation on the electric car the plaintiff claims that Lee said he had determined not to buy the land because of the price asked. In reply to this statement of Lee the plaintiff testified that he said to Lee, in substance, that in view of the fact they had been using trading values he ought to know the land could be bought at a price between $225 and $200 an acre and asked Lee to make him a cash offer. This Lee declined to do.

Upon examination of the record in this case we are of the opinion that the trial judge was correct in his finding of facts. There is no dispute about Lee having been first produced by the plaintiff and it cannot be seriously doubted that Lee never waivered in his intention to buy the land from the time he looked at it on December 9. It was not necessary for the trial judge to determine just what prompted Lee to endeavor to close the deal through some one else than the plaintiff. It is apparent that he had some purpose which seemed to be sufficient to him. His breaking off of negotiations with the plaintiff and taking them up with another brokerage firm was not the result of any decision on his part not to buy the land. The circumstances surrounding the transaction were such that the defendant Coleman ought to have known that his agent Francisco was not being fairly treated. Almost from the first he suspected that Stewart & Stockwell's customer was Lee. He was repeatedly admonished by the plaintiff that if the customer turned out to be Lee, he would be asked to pay plaintiff

the commissions agreed upon. Coleman saw fit to let the matter drift and closed the deal through his new brokers without making any effort to protect his original agent, who was unquestionably the procuring cause of the sale. Under such circumstances the defendant cannot avoid the payment of the commissions agreed upon. (*Rigdon v. More*, 226 Ill. 382; *Ogren v. Sundell*, 220 Ill. App. 584; *Hafner v. Herron*, 165 Ill. 242.) The defendant urges that under the contract of employment the plaintiff was to receive only what he could obtain over $200 an acre in case he effected a sale, and inasmuch as the farm was sold for no more than $200 an acre the plaintiff therefore has no just claim for commissions. We cannot agree with this contention. In the first place, according to plaintiff's testimony, he was to receive a commission of two and one-half per cent in case a sale of the farm was concluded by the owner with a purchaser produced by the plaintiff.

The trial judge gave this testimony credit and we think he was right in doing so. But even if the agreement had been on a net price basis only, under the evidence in this case the plaintiff would have a right of recovery. Where an agent is employed to sell real estate for the owner and is instrumental in bringing the owner and the buyer together and the owner then concludes the sale at a less price than the agent was authorized to sell for, the agent is entitled to compensation for his services. (*Wright v. McClintock*, 136 Ill. App. 438; *Wilson v. Mason*, 158 Ill. 304; *Hafner v. Herron, supra; Rigdon v. More, supra*.)

Complaint is made of the court's finding of facts as well as to its holdings on propositions of law. We fully concur in the findings of fact as the same were made by the trial court; and the holdings on propositions of law were correct holdings as applied to the facts found by the court. The judgment of the trial court is therefore affirmed.

*Judgment affirmed.*